### WILCOX *et al. v.* PAYNE *et al.*[1]

(*Supreme Court, General Term, First Department.* January 10, 1890.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—ACTIONS BY JUDGMENT CREDITORS.
    Code Civil Proc. N. Y. § 1871, authorizes judgment creditors, after the return of execution, to sue the debtors, or any other person, to compel discovery of any chose in action or other property of the debtors, and to prevent its transfer. Section 1873 provides that the judgment in such action may direct the satisfaction of the creditors' claims out of the discovered property, whether the same was originally taken by virtue of execution or not; and section 1877 provides for the appointment of a receiver. *Held,* that judgment creditors might sue to set aside a conveyance as fraudulent where execution on their judgments was returned unsatisfied.

2. SAME—PLEADING—AMENDMENT.
    Under Code Civil Proc. N. Y. § 723, permitting a material amendment to be made where it does not substantially change the claim or defense, a complaint to set aside an assignment as in fraud of creditors may be amended by adding that on the day of its execution the assignors confessed judgments, in favor of seven creditors, to an amount largely in excess of the value of one-third of their property, contrary to the statute, and in fraud of complainants.

3. SAME—PREFERENCES—CONFESSIONS OF JUDGMENT.
    Laws N. Y. 1887, c. 503, prohibits preferential assignments in excess of one-third of the value of the debtor's property after payment of the wages of employes and the costs of executing the trust. The members of an insolvent firm made a general assignment, and on the same day confessed judgments in favor of seven creditors, to an amount exceeding the value of one-third of their property. The managing partner had drawn out of the business $6,000 on the day of the assignment, and nearly $40,000 within two weeks prior thereto, without accounting therefor. *Held,* that the assignment would be set aside as fraudulent.

4. SAME—EVIDENCE—SCHEDULE.
    The schedules and inventory prepared by the assignee were competent evidence, so far as he or his successor was a party to the suit.

Appeal from special term, New York county.

Action by Dutee Wilcox and another against William H. Payne and others to set aside an assignment made by Payne, Steck & Co. to Arthur H. Smith, for the benefit of their creditors. From the judgment for plaintiffs, defendant Payne appeals.

Argued before VAN BRUNT, P. J., and BARRETT and DANIELS, JJ.

*L. Laflin Kellogg,* for appellant. *S. F. Kneeland,* for respondents.

DANIELS, J. By the judgment which has been recovered, a general assignment made by the defendants William H. Payne and Frederick D. Steck, as partners in business, for the benefit of their creditors, has been set aside as fraudulent. This assignment was made to the defendant Arthur H. Smith. It was executed by the assignors on the 28th of December, 1887, and accepted by the assignee on the following day. He was afterwards removed from his position as assignee, but for no fault of himself, and a trustee appointed in his place, under the assignment. The assignors were

[1]Affirming 4 N. Y. Supp. 358.

engaged in business as dealers in jewelry; and the assignment was made and executed under the suggestion of the defendant William H. Payne, as one of the partners. He was in the management of the business at the store occupied by the firm in the city of New York, while the other defendant, Steck, was engaged in traveling and selling goods. He was away for that purpose immediately preceding the execution of the assignment, and returned to New York at the request of his partner; and when he returned, at the instance and under the direction of his partner, the assignment was executed. The defendant Payne is shown to have drawn out of the business of the firm in the year 1886 the sum of $3,705.96; and in 1887, up to and including the day on which the assignment was executed, he drew from the firm the sum of $46,-511.47. Of this amount, it was stated by the book-keeper that he had drawn, after the 15th of December, in 1887, near the sum of $40,000; and on the day when the assignment was made he drew from the firm over $6,000. This money was charged to him in his account with the firm; but what use may have been made of any part of it, beyond its appropriation to his own private benefit, was not stated or made to appear upon the trial.

The plaintiffs were creditors of the firm at the time when these moneys were drawn out by the defendant Payne, and when the assignment was executed. They afterwards recovered a judgment upon their debt, and issued an execution against the property of the debtors, which was returned wholly unsatisfied. The defendants have objected that the action cannot be maintained to set aside the assignment, for the reason that the execution was in fact returned. But this objection is directly in conflict with section 1871 of the Code of Civil Procedure, authorizing, as the law preceding it did, the judgment creditors, after the return of the execution, to maintain an action against the debtors, and any other person, to compel the discovery of anything in action, or other property belonging to the judgment debtors, or of any money, thing in action, or other property due to them, or held in trust for them, and to prevent the transfer thereof, or the payment or delivery thereof, to any other person, and to procure satisfaction of the plaintiffs' demand, as prescribed by section 1873 of the same Code. And that has provided that the judgment in the action may direct and provide for the satisfaction of the sum due to the plaintiff out of any money, thing in action, or other personal property, belonging to or due to the judgment debtor, or held in trust for him, which is discovered in the action, whether the same might or might not have been originally taken by virtue of an execution. And section 1877 of this Code has provided for the appointment of a receiver in the action of all the property of the judgment debtors, and for directing them to convey or deliver their property, real or personal, to such receiver. This, as the preceding law did, furnishes ample authority for the maintenance of this action; and the suit, in the form in which it has been prosecuted, is in no respect in conflict with the cases supporting the principle allowing the judgment creditor to maintain an action to set aside fraudulent transfers of property standing in the way of an execution held by the sheriff for the purpose of collecting a judgment. The law has provided for and sanctioned two remedies: One by the judgment creditors, to set aside unlawful or fraudulent transfers standing in the way of an execution issued to and held by the sheriff; and to maintain such an action it is indispensable that the execution shall be held by the sheriff, certainly, at the time of commencing the suit. The other, which is the action provided for by these sections of the Code, after an execution shall be issued and returned unsatisfied. The judgment creditors have their election as to which proceeding shall be taken. If tangible property can be found, which by the action may be rendered the subject of levy and sale under the execution, an action to set aside fraudulent transfers of that property is legal and proper. But where that may not be the case, and the execution has been returned unsatisfied, there

the judgment creditors are entitled to maintain an action, in the form in which this has been brought, to reach any property belonging to the debtors which they may be able, under the judgment of the court, to appropriate, through the instrumentality of a receiver, to the payment of their judgment. This action is in this form, and it was found to be supported by the large amount of money which the defendant Payne drew out of the firm immediately preceding the assignment. In this respect it was very plainly distinguishable from the cases of *Vietor* v. *Nichols,* 13 N. Y. St. Rep. 461, and *Vietor* v. *Henlein,* as reported in 34 Hun, 562; for there the amount drawn from the firm was so inconsiderable as not to justify the inference that the debtor obtaining it was actuated by any fraudulent intent, while in this case the amount which was drawn by the defendant Payne in the latter half of the month of December, 1887, very fully supported an entirely different inference. If the amount, in whole or any part, had been in this manner taken for the payment of debts, or for any other legal or justifiable object, the expectation is both reasonable and natural that evidence to that effect would have been given on behalf of the defendants. In its absence, and without any proof whatever tending to show that any part of the money had been used on behalf of the firm, the inference is warranted that it was taken by this partner, and appropriated to his own use, to defraud the creditors of the firm who might be otherwise paid under the general assignment, which it was most probably intended and expected would be made while these drafts of money were taking place. No violence whatever has been done to the evidence in reaching the conclusion that this money was fraudulently abstracted, and that it was so taken by this member of the firm with the expectation and intention that an assignment would and ultimately should be made for the benefit of the creditors, and that by taking these moneys as they were drawn from the firm the creditors should be deprived so far of the benefit of its property.

At the commencement of the trial the plaintiffs applied for leave to add to their complaint the following allegations and statements: "That at the time of the drafting and execution of the said assignment, and as part and parcel of the same transaction, and with the intent thereby to create a preference to an extent of more than one-third of the entire assets of the estate, and to thus avoid the statute in such cases made and provided, the said assignors, William H. Payne and Frederick D. Steck, confessed judgments to Augusta L. Bamber, William Bamber, Louisa Nellis, Alonzo E. Wemple, Frank J. Griffith, Alfred C. Smith, and May L. Payne, to an amount in the aggregate of about $30,000, and issued executions thereon, which executions were placed in the hands of the sheriff, and levies were caused to be made upon them, prior to the filing of the assignment; and that the amount of the said judgments and executions so confessed was in excess of one-third of the assets of the assignors, and was in fact more than two-thirds of the assets of the assignors; and that property exceeding in value two-thirds of the entire assets of said assignors was sold under said execution by the sheriff of the city and county of New York." And the court allowed the addition to be made, to which the defendants' counsel excepted. This amendment or addition added a statement of further grounds for assailing the assignment as fraudulent; and it was not affirmed on behalf of the defendants that they could or would be misled by the allowance of the amendment. And section 723 of the Code of Civil Procedure has authorized the court at the trial to permit an allegation material to the case to be made, where it does not change substantially the claim or defense. This amendment was within this power, and could have been no possible cause of surprise to either of the defendants. Under the complaint so amended, the plaintiffs proved that seven judgments had been confessed by the judgment debtors on the day when they executed their assignment, and just preceding that event. Executions were issued upon these

judgments to the sheriff, and all the goods in the defendants' store were taken, and afterwards sold by the sheriff, to satisfy the judgments. The amount of property in this manner taken and appropriated was of the value of about $20,-000; and the inference was warranted that the judgments were confessed, and the property levied upon and sold in this manner, to prevent it from passing under the assignment. The amount of property in this manner appropriated under the judgments greatly exceeded one-third of that owned by the judgment debtors and assignors; and it is to be inferred, from what in this manner was done and accomplished, that the assignors intended thereby to evade and disregard chapter 503 of the Laws of 1887, forbidding any greater amount of their property to be appropriated to the payment of preferred debts than one-third of that which should remain after paying the wages of employes, and the costs and expenses of executing the trust. The plain object of these judgments was to prevent that part of the property of the judgment debtors from passing under the assignment for the benefit of the creditors which should be levied upon and sold for the payment of these judgments. They placed the judgment creditors precisely in that position, intending, before the delivery of the assignment, that they should be afforded the opportunity of levying upon and seizing the property as they did; and by this course of action they diminished the amount of the estate which would otherwise have passed into the hands of the assignee under the assignment to about the sum of $9,000. That defrauded the creditors entitled to come in under the assignment of more than one-third of the property of the assignors; and it formed an additional circumstance, which the plaintiffs were entitled to rely upon, to set aside this assignment as fraudulent. All that was done at the time appears to have been the result of one general intention on the part of the assignors, and that was that the creditors favored by the confessions of the judgments should be first permitted to appropriate whatever property was the subject of levy and sale under their executions, and that the residue only should be permitted to pass into the possession of the assignee for the benefit of the creditors under the assignment. This was a clear evasion and violation of the restraints intended to be created and imposed upon the debtors by the act of 1887; and that such judgments, confessed at such a time and under these circumstances, would be fraudulent, follows from a fair and reasonable construction of the act. This general subject was considered in *White* v. *Cotzhausen*, 129 U. S. 329, 9 Sup. Ct. Rep. 309. The controversy there related to voluntary transfers of property by the insolvent debtor to certain of their creditors; and these were held to be fraudulent, as being within the prohibition of the statute of Illinois forbidding preferences to creditors by an insolvent debtor. Whether the transfers in this manner condemned shall be made directly to the creditors, or through the instrumentality of judgments and executions, can create no substantial difference. It is as much the forbidden act of the debtors to secure the transfer through confessed judgments and executions as it would be to voluntarily make them directly to the creditors, for the purpose of creating a larger amount of preferences than those permitted by the statute. The disposition of the debtor's estate is equally as liable to be characterized as fraudulent and evasive of the law in the one instance as it is in the other.

Further leave during the trial was made to amend the complaint, but not in any material respect; for, as the plaintiffs had alleged the assignment to have been actuated by a fraudulent intent, what was in this manner added to the complaint would probably be admissible as evidence without it, in support of that general allegation.

The schedules and inventory prepared by the assignee under the assignment were legally received in evidence; certainly, so far as he or his successor was a party to the action. They were made under the authority and direction of the statute, and were evidence to prove the amount of property which reached

the possession of the assignee under the assignment. The decision made by the court was fully supported by the evidence in the case, and the judgment should be affirmed, with costs. All concur.