## ABEGG *v.* SCHWAB *et al.*

(*Supreme Court, Special Term, New York County.* June 19, 1889.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—FRAUD.

Evidence that a debtor owing $90,000 confessed judgments in favor of five credit-
ors, to "protect" them, and then made an assignment by agreement with the as-
signee and creditors, although none of the creditors were pressing him; that the
estate was levied upon under two executions issued on the judgments before the
assignee took possession, and, on refusal of all the creditors to accept a settlement
of 50 per cent., was purchased by two of the judgment creditors and the clerk of
another, for $11,800, which was credited on the execution; that the goods were
turned over to a firm composed of the assignor's brothers, and formed its entire
capital, on the agreement of the firm to pay $12,700 to the judgment creditors, the
amount due from the assignor; that the firm thereupon appointed the assignor its
general manager, leaving him in full control and possession, under power of attor-
ney; and that the claims were paid to the judgment creditors a few days thereafter,
—is sufficient to set aside the confessed judgments and the assignment as fraudulent
and void.

Bill in equity, by Henry Abegg against Emanuel Schwab and one Lilien-
thal, to set aside certain judgments confessed by defendant Schwab to protect
certain creditors, and also an assignment of all his property as fraudulent.

*Blumenstiel & Hirsch,* for plaintiff. *Leopold Wallach,* for defendant
Lilienthal. *Luther W. Emerson,* for defendant Schwab.

INGRAHAM, J. By the evidence in this case it is established that the con-
fessed judgment and the assignment were together one plan whereby all the
property of the assignors was to be disposed of. The assignor testified that
on the morning that the assignment was executed he told Mr. Wallach that
"I had to make an assignment, owing to my father's death, and told him I
wanted to protect these men, [the persons in whose favor the judgments were
confessed,] and, at his suggestion, that was the mode in which it was done.
Then the confessed judgments were made out first." The instructions given
by the assignor to his attorney were that he had to make an assignment, and
wished to protect certain of his creditors, and that to carry out that design the
attorney suggested the plan of confessing judgments in favor of the persons
that the assignor wished to "protect," and then making an assignment. The
confession judgments being the means adopted to accomplish a definite scheme
or plan, it is clear that, if the scheme which was attempted to be executed was
prohibited by law, the means by which it was attempted to be carried out were
illegal and void. The total amount of the assigned estate was as follows:
Property sold by the sheriff, $13,749.33; amount collected by assignee, $23,-
000; making a total of $36,749.33,—one third of which amounted to $12,-
249.78. The total amount of the judgments confessed by the assignor, and
which were, by the method adopted, preferred, was $12,700.05.

By chapter 503, Laws 1887, it is provided that in assignments of the estate
of debtors for the benefit of creditors any preferences created therein shall not
be valid except to the amount of one-third in value of the assigned estate, after
deducting the wages of employés and the costs and expenses of executing such
trusts. This provision applies to all assignments for the benefit of creditors,
and, where such assignment contains preferences which are in excess of the
one-third of the estate which the law allows to be preferred, it is provided that
one-third of the assets only shall be applied to the payment of preferred claims.
But when the parties about to make an assignment attempt to evade this pro-
vision of law by means of confessed judgments, so that more than one-third
of the debtor's estate is actually paid to preferred creditors, the only way that
the law can be enforced is to declare the confessed judgments void, and set
them aside. This is precisely the result of the scheme adopted by the assignors
in this case. One-third of the gross amount of the assigned estate was $12,-
249.78, without deducting the expenses of executing the trust, and yet the

assignor has, by the confession of judgment, preferred creditors to the amount of $12,700.05. This is, of itself, sufficient to declare the judgments confessed unlawful and void. The same principle has been applied in other states where preferences are prohibited by law. I do not think, however, that this would justify the court in setting aside the assignment. By holding the confessions of judgment void, and setting them aside, the whole property of the assignor would vest in the assignee, and could then be applied, according to its provisions, to the payment of the assignor's debts; and, if the assignee was a party to the fraud, the court could appoint a substituted assignee to carry out the trusts. It is, however, unnecessary to determine this question, as a consideration of the testimony has convinced me that the assignment was not a *bona fide* transfer of the debtor's property for the benefit of his creditors, but the scheme was devised by the assignor for the purpose of preventing the application of his property to the payment of his debts.

The assignor was in business with his father, and in the five months preceding the assignment the firm purchased, on credit, about $90,000 worth of merchandise. November 21st the father died. There is no evidence that any of the creditors were pressing the assignor, but two or three days after the father's death this assignment was contemplated, and, on the morning of the 25th of November, the proposed assignee, two of the persons who were to be preferred, and the assignor met at the office of Mr. Wallach, who subsequently appears to have acted as the attorney for the assignor, assignee, and the creditors who obtained the judgment. Confessions of judgment were prepared in favor of the five persons who were to be "protected," were executed by the assignor and sent to the county clerk's office to be entered, and executions were issued thereon; the assignor and assignee went to the county clerk's office, taking with them the proposed general assignment, meeting the clerk of the attorney for the assignee there, who took their acknowledgment of the execution of the instrument, and it was filed. The assignee proceeded to take possession of the assigned estate, when he found the property in charge of the sheriff under two executions on the confessed judgments. There was then a meeting of creditors called. The assignor offered to pay 50 cents on the dollar in settlement of his indebtedness. Some of the creditors accepted this offer, and it is in evidence that one of them was subsequently paid that percentage of his claim against the assignor by Schwab Bros. The offer was not accepted by all the creditors. In the mean time the stock of merchandise, including, so far as appears, all the property of the assignor which could be levied on, had been advertised for sale by the sheriff, under the executions issued on the confessed judgments, and, on the failure of the creditors to promptly accept the offer made by the assignor, the property was sold and substantially all of it purchased by four persons, Lilienthal and Gazen being two of the judgment creditors; Frank being the clerk of Guggenheimer & Sons, another of the judgment creditors. The amount purchased by these four persons was over $11,800 out of a total of $13,749. Not one cent was paid in cash by anybody for these goods, but the amount was credited on the execution. The goods themselves were never delivered to the purchasers, but were turned over to the firm of Schwab Bros., a copartnership then organized and composed of two younger brothers of the assignor. No money was contributed by the parties to form that copartnership, its entire capital being the goods of the assignor purchased at the sheriff's sale, and it immediately proceeded to appoint the assignor its general manager, giving him a power of attorney to transact all business, draw checks, etc.; whereupon, as it appears, the members of this new firm left the city, leaving the assignor in full possession and control of the property which but a short time before he had ostensibly applied to the payment of his debts.

But the terms on which the purchasers at this sale transferred the goods to this new firm are suggestive. They had purchased the goods to protect them-

selves as creditors, but they immediately transferred them to Schwab Bros., on the agreement of that firm that they would be paid, not the value of the goods, not the amount that the goods will realize on a sale, but the amount due to them from the assignor. Lilienthal says he was first promised notes for the amount due him from the assignor, indorsed, but as they said they would soon sell the goods he did not get the notes, but did shortly after get his money. He was the only one of the persons who purchased goods at the sale that was examined as a witness, but Mr. Guggenheimer, who was one of the judgment creditors, says he sent an employe of his, David Frank, with instructions to protect his interests, and that all he knows is that in a few days he got the amount the assignor owed him from the assignor's attorney; that he did not pay for any of the goods bought; did not get possession of any goods bought, and knew nothing about it, except that Mr. Frank said he had bought sufficient to cover his claim; that he got his money, and that was all he was interested in. We know, however, that Frank, to protect a claim of $768.34, bought $6,356.87 worth of goods, which were also turned over to the firm of Schwab Bros. without anybody paying one cent or incurring any obligation, except that Mr. Wallach, who, as attorney, had represented the assignor, the assignee, and the judgment creditors, said that if the goods were turned over to Schwab Bros. the judgment creditors would be paid. During the time that these proceedings took place, the assignee stood by, apparently with full knowledge of all that was going on, and without doing anything to prevent this disposition of the property of the assignor, which had been assigned to him for the benefit of his creditors.

It seems to me that this statement of the facts proved by the parties to the transaction is sufficient to satisfy the most skeptical that there was no sale, no transfer of the property, that it was never intended that there should be either a sale or a transfer of the property, but that the whole scheme was one devised to prevent the stock of merchandise from being appropriated to the payment of the assignor's debts, and that the assignor succeeded, by paying, or agreeing to pay, about $12,700, of which $4,800 was to his mother, in obtaining possession of a stock of goods for which he had agreed to pay, and for which he owed, about $90,000. It is quite evident that any scheme which will accomplish such a result defrauds the creditors of the assignor. Plaintiff is therefore entitled to judgment setting aside the judgments entered on confession and the assignment as fraudulent and void, with costs.