De Vau *v.* Pennsylvania & N. Y. Canal & R. Co.

(*Superior Court of Buffalo, General Term.* November 19, 1889.)

Master and Servant—Negligence of Master—Defective Machinery—Evidence.
In an action for personal injuries, it appeared that while plaintiff was working along-side certain cars, which were being unloaded of earth and gravel by means of a "plow," the plow fell over the side of the car, and injured him. The plow had been used for five years, without any injury resulting therefrom, and plaintiff failed to show why the plow fell, but defendant's evidence tended to show that it was thrown off by a stone that had lodged between two of the cars, and it appeared that it had frequently fallen before from a similar cause. The plow was pulled by the locomotive, and the whistle was usually blown when it started, but on this occasion it was not. *Held*, that a verdict for plaintiff was warranted. Hatch, J., dissenting.

Motion for new trial upon exceptions.
Argued before Beckwith, C. J., and Hatch, J.
*Charles A. Pooley,* for plaintiff. *Frank Brundage,* for defendant.

Beckwith, C. J., was of opinion that the motion should be denied, but filed no opinion. Motion denied.

Hatch, J., (*dissenting.*) The allegations of the complaint show this to be an action for damages on account of personal injuries, alleged to have been sustained by reason of the negligence of the defendant. The *gravamen* of the charge is contained in the fourth count of the complaint, viz.: "That in the conduct of its business as such railroad corporation, and in the performance of the work in filling up its road-bed, as above set forth, it was the duty of the defendant to furnish good, suitable, and safe machinery, appliances, cars, plows, and locomotives, and to employ competent and fit men for the performance of the work required of them; that, notwithstanding this, defendant, at the time and place aforesaid, failed and neglected to furnish good, suitable, and safe machinery, appliances, cars, plows, and locomotives, and failed and neglected to employ competent and fit men for the performance of the work required of them, but, on the contrary, they furnished unsuitable and unsafe machinery, appliances, cars, plows, and locomotives, and employed incompetent and unfit men to handle the engine and cars and plows used as aforesaid,—all of which was known to the defendant, but unknown to this plaintiff." The complaint further alleges that by reason of the foregoing the said plow was thrown from one of the defendant's cars, and inflicted the injuries for which the recovery is sought. It is thus seen that the issue of negligence presented by the pleading has reference to but two propositions: *First,* the furnishing of unsuitable and imperfect machinery; and, *second,* the employment of incompetent and unfit men in and about the performance of the work. The latter ground may be at once dismissed from consideration, as there was no evidence given upon the trial tending to establish negligence in this regard. As to the former, the issue furnished by the complaint was adhered to upon the trial, formed the basis upon which the case was submitted to the jury, and is now insisted upon to uphold the verdict.

Upon the facts, I am of opinion that the position cannot be upheld. It appeared, substantially without dispute, that plaintiff, at the time of receiving the injury, was employed in and about a trestle which was being filled with dirt and gravel, hauled to said trestle upon gravel-cars, which were loaded with a steam-shovel, at Cheektowaga, a few miles away. When the cars were loaded men were present to remove from the material all large stones, for greater safety in unloading. The cars were then run to the trestle, and unloaded, with an iron machine called a "plow." This machine was about 24 feet long, and rested upon 4 wheels, 10 or 12 inches in diameter. A mould-board, jointed and flanged out upon one side from 3 to 3½ feet high, made of boiler iron, was bolted to the beam of the plow. This beam was about 12 inches wide and 8 inches thick, and ran its whole length. Iron braces ran

across, and it was bridged with boiler iron. The bottom was furnished with an iron shoe, bolted on, covered with a steel plate, and the axle of the wheels ran through the center of the beam. The plow ran along the surface of the cars. Its weight was from 2 to 3 tons, and there was piled upon it from 4 to 5 tons of railroad iron, the whole weighing from 7 to 8 tons. Upon one side of the gravel-car, extending its whole length, there was bolted a piece of timber about 8 inches square, called the "guard-rail." The manner of unloading was to uncouple 6 cars from the train; chain them fast to the track, the plow being upon the rear car; attach the plow, by means of a cable, hitched at its front end by a hook or clevis, to the engine; and thus draw it along over the car, one side running next to the guard-rail, and the other, upon which was the mould-board, crowding the dirt off the opposite side of the car. The plow had been thus used about 5 years, and was in working order both before and after the accident. Upon the occurrence of the accident, the plow had been started, and the dirt removed from one car, and was running onto the next, when it suddenly toppled over the guard-rail side of the car, and struck the plaintiff, inflicting the injuries complained of. The plaintiff lived near the trestle, and had seen defendant filling it for some time. He had worked for defendant 2 years, but had only seen the plow operated 5 or 6 times. Previous to the accident plaintiff testified that he was directed to go forward of the plow and shovel off the dirt from the rails between the cars, and was so engaged when injured. He did not know, nor did it appear by his whole proof, what caused the plow to leave the car, but it was shown that on some days the plow would fall off 5 or 6 times, and upon other occasions would not go off at all. Evidence was given tending to show that when any substance, like a stone or clog, got under the wheels, it would lift the plow up, when it would topple over, and either go wholly or partially off. On the occasion in question the evidence of defendant tended quite strongly to show that the cause of its being thrown over was a stone, which had become wedged between the bumpers of the car, projecting up from 5 to 7 inches, and that the plow was raised up by it, and thus thrown over. When it fell it was moving as fast as a man would ordinarily walk. In starting the plow the engineer usually blew the whistle, but omitted it upon the occasion of the injury. There was an utter failure of evidence to show that the plow used was not such a one as was ordinarily used for the result aimed at, or that there was any better or other known device for the purpose. On the contrary, it appeared that the machine had been in use for five years, and that no injury had resulted therefrom. It would sometimes be thrown off the car, if a substance, sufficiently solid, got under it, and raised it up, but the same thing is equally true of a steam-engine or cars, when running upon a track, if they come in contact with a sufficient obstruction to throw them therefrom; so that there is no reason for claiming the machine in use was inherently dangerous.

The law is satisfied when the master has furnished a machine which is reasonably safe and suitable for the purposes required. *Hickey* v. *Taaffe*, 105 N. Y. 26, 12 N. E. Rep. 286. He is not bound to furnish the best or most approved machine, or the safest, but is only bound to exercise reasonable care and prudence in the selection of one that is reasonably safe. *Probst* v. *Delamater*, 100 N. Y. 266, 3 N. E. Rep. 184. Here there is nothing to show but that the machine used was of the most approved character. When the master has furnished a machine of the character required, the servant in entering upon the employment assumes the risk incident to its use. *Sweeney* v. *Envelope Co.*, 101 N. Y. 520, 5 N. E. Rep. 358. Independent of these considerations, however, there is nothing shown tending to establish that the master has in any sense violated its duty with respect to the machine furnished, and my mind is irresistibly forced to the conclusion, upon the evidence, that this injury was the result of an accident which reasonable foresight and care could not guard against. This finds support in the fact that plaintiff and his wit-

nesses are unable to assign a cause for the plow leaving the car, while imme--diately following it the machine remains in good condition, and a stone is·. found in the direct path of the plow, bearing marks of contact with it, and at the point where the plow is thrown over.   This, coupled with the uncontra--dicted fact that it had only toppled over before when raised by a foreign sub--stance, leads to the conclusion that it was so caused in the present case.   Un--der such circumstances, a master has never been held responsible.   *Hussey* v. *Coger*, 112 N. Y. 614–621, 20 N. E. Rep. 556.   Liability cannot be predicated: upon the failure to sound the whistle when the plow was started.   If we as-sume it to be negligence, it was clearly that of a co-employe, and, within the · principle of the last case cited, would not render defendant liable.   Upon the issue furnished by the pleadings and the theory of the trial, no question of ' providing rules for the conduct of employes in the performance of the work is in the case, and it may not be considered.   I am therefore of opinion that the exceptions should be sustained, and a new trial ordered, with costs to · abide the event.