HERMAN STEIN and MONROE L. SIMON, Respondents, *v.* JULIUS A. LEVY, Appellant.

*Attachment — false representations — offering to allow judgment to be taken — acceptance of the offer and a levy upon the entire stock in trade of the debtor.*

On an application to vacate a warrant of attachment, it appeared by the affidavits, upon which the attachment was granted, that certain representations made by the defendant, that he was perfectly solvent; that the plaintiffs were his largest creditors; that, outside of the money owing to them, he owed only one or two thousand dollars, were false; because at the time they were made defendant had made and delivered to his son a promissory note for $6,400, which he knew he could not pay, which fact he concealed from the plaintiffs, permitting his son to commence an action upon such note, offering to allow judgment to be taken therein for $6,000, which offer was accepted, and judgment was entered thereon, and a levy made thereunder upon the whole stock in trade and fixtures of the defendant.

It was further alleged that the concealment and the levy of the execution were a part of a scheme, on the part of the defendant, to dispose of his property with intent to cheat and defraud his creditors.

*Held,* that, if the defendant was indebted to his son, the latter had a right to commence an action, and the defendant to offer to allow judgment to be taken therein in order that his son might secure a preference over other creditors by the levy of his execution.

That the fact that the whole of the stock in trade of the defendant had been levied upon by virtue of the execution did not violate the provisions of chapter 503 of the Laws of 1887 denying the right of an insolvent debtor, in making a general assignment, to prefer one creditor or class of creditors to the extent of more than one-third of his estate.

That the provisions of this act had no application to the case of a judgment and the execution levied thereunder, and related only to cases of general assignment.

That the provisions of said act only applied to the confessions of judgments where they constituted a part and parcel of a scheme resulting in a general assignment, whereby all the debtor's property was devoted to the payment of his debts. (Daniels, J., dissenting.)

Appeal by the defendant from an order made at a Special Term, held in the county of New York, and entered in the office of the clerk of the county of New York on the 8th day of November, 1889, denying the defendant's motion for an order vacating and setting aside a warrant of attachment granted in the above-entitled action against the property of the defendant.

*Samuel Greenbaum,* for the appellant.

*Benno Loewy,* for the respondent.

VAN BRUNT, P. J.:

Upon the affidavit of one of the plaintiffs showing a cause of action against the defendant for damages, because of alleged fraudulent representations made by the defendant at the time of the sale of certain goods, wares and merchandise upon credit, an attachment was issued against the property of the defendant upon the ground that the defendant had disposed of his property with intent to cheat and defraud his creditors. ·

A motion having been made upon the papers upon which the attachment was granted to vacate the same, such motion was denied, and from the order thereupon entered this appeal is taken.

A good cause of action was set out in the affidavit, and the only question presented upon this appeal is whether there were any facts stated in the affidavit which justified the justice who issued the attachment in concluding that the defendant had disposed of his property with intent to cheat and defraud his creditors. The affidavit in question alleged certain representations made by the defendant as to his financial standing at the time he obtained the credit for the goods in question, and that, relying upon such representations, the plaintiff sold and delivered to the defendant such goods upon credits that had not then expired.

Among the representations made by the defendant, alleged in the affidavit, were that he was perfectly solvent; that the plaintiffs were his largest creditors, and that outside of the moneys due and owing to them he owed only to the amount of one or two thousand dollars, and solely for merchandise. These representations, it is claimed, were false, because, at the time they were made, the defendant had made and delivered to one Charles F. Levy, his son, a promissory note for $6,400, which note the defendant, at the time, knew he could not pay, and which was not made for goods sold and delivered. The affidavit further states that the defendant having concealed the fact of his alleged indebtedness to his son, Charles F. Levy, as aforesaid, from the plaintiffs, on or about the 11th of October, 1889, permitted and caused the said Charles F. Levy to commence an action in this court upon said note and indebtedness, and thereafter, for the purpose of expediting judgment in said action, offered judgment in the sum of $6,000, which offer was accepted and judgment was thereupon entered in favor of said Charles F. Levy against the

defendant, for the sum of $6,017.90; and that an execution was issued upon said judgment, and the sheriff thereupon levied upon the whole of the stock in trade and fixtures of the defendant under the said execution.

The affidavit contains the further averment that this concealment of the promissory note and the levy upon the execution was part of a scheme on the part of the defendant to dispose of his property with intent to cheat and defraud his creditors, especially these plaintiffs. It is apparent, upon the face of the affidavits, that most of the allegations in regard to the fraud connected with the entry of the judgment are mere surmises upon the part of the affiant, and there is no evidence whatever to support the same. There is nothing from which we may infer that the holder of the promissory note, in the proceedings which he took, did anything more than that which the law allows in endeavoring to secure the payment of the just claim which he had against the defendant. And the question thus presented is whether the offer to allow judgment upon the part of the defendant, in the action brought by Charles F. Levy to secure the payment of the indebtedness due to him, is such a fraud upon the creditors of the defendant as to warrant the issuing of an attachment upon the ground that such offer resulted in a disposition of the property of the defendant with intent to defraud his creditors.

It is clear that, in pursuing the remedies which the law affords to both creditors and debtors for the entry of judgment, no inference of fraud or corrupt intent can obtain. If the defendant was indebted to Charles F. Levy, which must be conceded or otherwise no cause of action is set out in the affidavits, the latter had a right to commence his action and the defendant had a right to offer to allow judgment in order that Charles F. Levy might secure a preference over other creditors by the levy of his execution.

It is urged, upon the part of the respondent, that the fact that the defendant permitted the plaintiff's charge of fraud to go uncontradicted and unexplained, while in his affidavit, used in support of his motion, he had full opportunity for explanation, should induce the court to indulge in every inference unfavorable to his case, and, in view of that fact, the charges must be considered fully proved.

It will be perceived upon an examination of the affidavit upon

# 384 STEIN v. LEVY.

the part of the defendant, that it was the mere formal affidavit to entitle the party to obtain an order to show cause rather than to suffer the delay attendant upon the making of a motion, and that the application to vacate the attachment was made upon the plaintiff's affidavit alone, there being no attempt on the part of the defendant to introduce any evidence as to the merits of this application. Under these circumstances, fraud is not to be presumed. Fraud must be proven, and the allegations contained in the plaintiff's affidavit, upon which the attachment was granted, in no way show any fraud or anything further than an attempt upon the part of a creditor of the defendant to obtain that priority which the law entitles him to seek.

It is, however, suggested that the whole of the stock of the defendant having been levied upon by virtue of the execution, such seizure in favor of one of the creditors of the defendant, brought about with his consent, is opposed to the policy created by chapter 503 of the Laws of 1887, and that by that act the right of an insolvent debtor to prefer one creditor or class of creditors to others has been restricted to one-third of his estate, and that the provision there made was enacted to prevent abuses of this description, which had so frequently arisen in the disposition of estates of insolvent debtors. By that act it is provided that *in all general* assignments of the estates of debtors for the benefit of creditors any preference created therein (other than for wages or salaries) shall not be valid except to the amount of one-third of the assigned estate after deducting such wages or salaries and the costs and expenses of executing such trust; and should said one-third be insufficient to pay in full the preferred claims to which, under the provisions of the section, the same are applicable, then said assets are to be applied to the payment of the same *pro rata* to the amount of each of said preferred claims.

It will be seen that the act relates entirely to general assignments. It provides that in all general assignments any preferences therein created shall not be valid except to the amount of one-third in value of the assigned estate, etc. The fact of an excess of preference in no way affects the validity of the assignment. It only requires that the preferences shall be reduced *pro rata* until the same shall not exceed one-third of the assigned estate. If the policy of the law, as therein declared, should be held to apply to the judgment in

question, it clearly would not render the judgment totally void, because the law in no case makes any preference inoperative, except so far as it exceeds one-third of the estate. Now, there is no way in which it is possible to ascertain, in the case of a judgment and execution, as to what one-third of the estate would be, and, as a consequence, it seems to be clear that the provisions of the act in question can have no application to the case of a judgment and an execution levied thereunder.

The provisions of the law in reference to remedies of that description remain unaltered and unabridged, and it seems to us that it would be a violent assumption to hold that, because of the provisions of this act in reference to general assignments, the provisions of the law in regard to the entry of judgments by offer should substantially be repealed, and that which the law had hitherto permitted to be done in that respect should be held to become fraudulent acts when, by the provisions of the act itself, if there is such an excess of preference in an assignment, it in no manner makes such assignment fraudulent and void as against creditors.

It is said, in the opinion of Mr. Justice DANIELS, handed down herewith, that this General Term has already decided, in a case not yet reported, the proposition that a debtor will not be allowed to evade or avoid this policy by confession of judgments, or the allowance of judgments to be taken against him in this manner. We think that the learned judge is mistaken in reference to the scope of the decision in the case referred to.

It was held in that case that judgments which were confessed as part and parcel of a scheme resulting in an assignment, whereby all the debtor's property was devoted to the payment of preferred creditors, should not be allowed to stand, as the assignment and confession of judgment must necessarily be considered together, they having been part and parcel of a single scheme, and were plain violations of the law in question. But where no assignment has been made, where the confessions of judgment are not a part and parcel of a scheme in reference to an assignment, we cannot see that the act in question has made any change in the rights which both the debtor and his creditor have in reference to the entry of judgment to secure the payment of the creditor's claim. The law

permits a creditor to sue, and the debtor to offer to allow judgment to be taken against him, and thus secure judgment without the delay incident to the ordinary procedure. Therefore, from the mere fact of a debtor permitting the creditor to obtain this preference which the law recognizes, no presumption against him is to arise. We think, therefore, that there was no ground for the issuing of the attachment in question, and that the motion to vacate the same should have been granted.

The order appealed from should be reversed, with ten dollars costs and disbursements and the attachment vacated.

BRADY, J., concurred.

DANIELS, J. (dissenting):

The attachment states the grounds upon which it was issued, to be, that the action was for damages for fraudulently obtaining and converting merchandise, and for the disposition by the defendant of his property with intent to cheat and defraud his creditors.

In support of these facts it was stated, in the affidavit made by one of the plaintiffs, that they had a good cause of action against the defendant for damages for a fraud and for fraudulently obtaining and converting the goods, wares and merchandise of the plaintiffs. The affidavit then proceeded to state that the defendant applied to the plaintiffs for the purchase of a quantity of tobacco. He had previously been a purchaser from the firm, but at this time desired to increase his purchase to so large an extent that a statement was required from him of his financial condition. Such a statement was made by the defendant, and in the statement he is sworn to have represented to the plaintiffs " that he was perfectly solvent; that the plaintiffs herein were his largest creditors; that, outside of the moneys due and owing them, he owed only to the amount of one or two thousand dollars, and solely for merchandise, and that they might well trust him since his business was prosperous and increasing, so that he needed those goods for sale."

The affidavit then proceeded to state that the plaintiff relied upon this statement and sold and delivered to the defendant goods, wares and merchandise of the value and at the price of $2,828.27, upon a credit ranging from five to nine months. This sale took place in the month of May, 1889, and no payment upon the purchase-price

of the goods was made by the defendant. The affidavit then proceeded to state that the defendant received the goods and disposed of them with the intent to cheat and defraud the plaintiffs, and that when he received them he did not intend to pay for them. It is then added that the statements made by him concerning his financial condition were false and untrue, in the fact that he was not at the time solvent, and that the plaintiffs were not his largest creditors, but that at the time when he made the statements he had made and delivered to his son a promissory note for the sum of $6,430, payable in four months from its date, which was the 8th of April, 1889, and that the defendant knew at the time when his representations were made that his statements were false and untrue, and designed to cheat and defraud the plaintiff. This was sufficient to establish a cause of action upon which an attachment under the provisions of the Code might be issued against his property. For it is provided by subdivisions 2 and 3 of section 635 that an attachment may be issued when the action has been brought for damages for the wrongful conversion of personal property, or for any other injury to such property in consequence of negligence, fraud or other wrongful act. And obtaining property in the form of a sale and purchase by one person from another by means of fraudulent representations, has been held to be such an injury to personal property as will present a case within the language of these subdivisions. (*Bogart* v. *Dart*, 25 Hun, 395 ; *Whitney* v. *Hirsch*, 39 id.; 325 ; *Campion Card & Paper Co.* v. *Searing*, 47 id., 237.) And the case of *Fleitmann* v. *Sickle* (13 N. Y. St. Rep., 399) is not in the slightest respect in conflict with this construction of these subdivisions of the section. For there the attachment was issued to recover an indebtedness for goods sold and delivered, and upon the sole other ground that the defendant had assigned, disposed of or secreted his property with intent to defraud his creditors. The same observation is also applicable to *Kibbe* v. *Herman* (51 Hun, 438 ; *S. C.*, 21 N. Y. St. Rep., 235). For this last case in no manner brought into controversy these provisions of the Code, neither was anything stated or decided in the case which would prevent an attachment issuing for the cause of action mentioned and set forth in the affidavit in this action. What it established was, that the defendant, by means of false and fraudulent representations, had, in the form of a purchase, obtained the property of the

plaintiff for the price, and amounting to the value mentioned in the affidavit, and that the representations inducing the sale of the property to him in this manner were at the time, and must have been known to him to have been, false when he made them. The cause of action was, therefore, sufficiently set forth to answer all the requirements prescribed by the law to entitle the plaintiffs to an attachment.

The only other or further requirement is that contained in section 636 of the Code of Civil Procedure, and that has provided, to entitle the party to an attachment, in addition to the cause of action, that it shall be made to appear either that the defendant is not a resident of the State, or that he has departed from the State with intent to defraud his creditors, or to avoid the service of a summons, or keeps himself concealed in the State with the like intent, or that he had removed or is about to remove from the State with intent to defraud his creditors, or has assigned, disposed of or secreted, or is about to assign, dispose of or secrete his property with the like intent. And to bring this case within this provision of the Code, and establish the fact that the defendant had assigned or disposed of his property with intent to defraud his creditors, it was further shown by the affidavit that an action had been commenced and judgment recovered against him by his son upon the note which has been mentioned.

This action was commenced on or about the 11th of October, 1889, and on the fourteenth of the month an offer was made to allow the plaintiff in the action to take judgment against the defendant for the sum of $6,000, with costs. This offer was, on the same day, accepted by the plaintiff in that action, and judgment was thereupon, and on the same day, entered against the defendant, as that was mentioned in the offer which was served. An execution is stated in the affidavit to have been at once issued upon this judgment, and a levy under the execution was made ·on the same day "upon the whole of the stock in trade and fixtures of the defendant," which were still held for the purpose of satisfying the judgment. This levy is stated to have been made upon the property with the intention to dispose of it, and with intent to cheat and defraud the other creditors, and especially the plaintiffs; and it is then added, that by reason of the levy substantially all the property of the defendant,

including part of the merchandise from the plaintiffs, had come into the possession of the sheriff for the purpose of being applied upon the judgment.

These proceedings indicate a decided probability that the plaintiff, who made the affidavit upon which the attachment has been issued, was right in his conclusion that the intention actuating the proceedings in the action in favor of the defendant's son was really to seize and appropriate his property, and prevent other creditors from resorting to it for the satisfaction of debts owing by the defendant to them. It is to be inferred from the affidavit that substantially all the property which the defendant had was seized and appropriated by the execution in this manner; and such a seizure in favor of one of the creditors of the insolvent debtor, brought about with his assent, is opposed to the policy created by chapter 503 of the Laws of 1887, for, by that act, the right of an insolvent debtor to prefer one creditor, or class of creditors, to others to whom he may be indebted, has been restricted to one-third of his estate. The provision there made was enacted to prevent abuses of this description which had so frequently arisen in the disposition of estates of insolvent debtors, and it was deemed necessary by the legislature to check and restrain it to such an extent that after the enactment of this statute no more than one-third of the property of the debtor should be disposed of, by way of preference in favor of any of his creditors, after payment of the amounts that may be due from him for wages and salaries to persons in his employment. The policy of the act is entirely clear, and that is, to take away from the insolvent debtor the power previously possessed by him of appropriating all his property to the payment of favored creditors, and allowing the others no means whatever for the payment of any part of the debts owing to them. It is true that the defendant has not made an assignment within the language of this act, but the policy of the act is to prevent him from making a preference in favor of his creditors beyond the one-third mentioned therein. And that the debtor will not be allowed to evade or avoid this policy by the confession of judgments or the allowance of judgments to be taken against him in this manner has been held already in cases heard and decided by this General Term but not yet reported.* This principle, under a statute still broader

---

*Spelman* v. *Freedman* (54 Hun, 409). — [REP.

in its language and effect, came before the Supreme Court of the United States for the consideration and construction of that tribunal in *White* v. *Cotzhausen* (129 U. S., 329). An attempt had there been made to evade the restraints of the statute by voluntary transfers of property by the insolvent debtor for the benefit of particularly specified and favored creditors. And they were held by the court to be illegal and in contravention of the spirit and policy of the act of the State of Illinois. And the principle was sanctioned that no matter by what name the end is sought to be effected, it is in violation of the statute. "You may call it a mortgage or you may make a confession of judgment, or use any other contrivance by whatever name known, if the purpose is to dispose of an insolvent debtor's estate whereby a preference is to be effected, it is in violation of the statute." (Id., 344.) And to dispose of the property pursuant to an intention to evade the language and effect of an act of this description is a fraud upon the other creditors of the insolvent debtor. He cannot, either directly or indirectly, deprive them of the rights intended to be secured by this statute for the satisfaction or partial satisfaction of the debts owing to them. And to attempt to do so, whatever may be the form of the proceeding by which the object is to be accomplished or effected, is an evasion and fraud upon the law, and presents such a disposition of the debtor's property as is forbidden by this section of the Code. That has prohibited him from assigning or disposing of his property with the intent to defraud his creditors. It was a fraud upon the other creditors to permit his son, by his own participation and consent, to obtain judgment upon this note in the manner in which that was done, and to seize and appropriate substantially all the property of the defendant for the purpose of paying that judgment; and if that should be permitted or allowed to succeed, it would be a device by which the entire effect and policy of this statute could be evaded and defeated by a fraudulent and dishonest debtor. The law will permit the success of no such artifice, but will require the policy upon which the enactment of this statute has proceeded to be observed and maintained by insolvent debtors.

The affidavit upon which the attachment was issued was sufficient to sustain it, and the order denying the motion was right and should be affirmed, with costs.

Order reversed, with ten dollars costs and disbursements, and the attachment vacated.