THE FIRST NATIONAL BANK OF JERSEY CITY, Appellant, *v.* FREDERIC B. BARD, Individually and as Assignee of CLARKE, RADCLIFFE & CO., and Others, Respondents.

*Confession of judgment, preceding an assignment for the benefit of creditors, and intended to create an illegal preference, is void — chap. 503, Laws of 1887.*

The members of an insolvent firm had an assignment prepared and executed it, and at the same time made confessions of judgment in favor of certain *bona fide* creditors. They waited, before delivering the assignment, until they were informed that a levy had been made under the judgments, the amount of which exceeded the proportion of their estate, which, by chapter 503, Laws of 1887, might be devoted to preferences:

*Held*, that all their acts were part of one scheme, the effect of which was to create forbidden preferences, and that the assignment and the judgments preceding it were fraudulent and void.

Appeal by plaintiff, the First National Bank of Jersey City, from so much of a judgment, entered in the office of the clerk of the city and county of New York on the 1st day of June, 1889, as finds and adjudges that a certain judgment to the defendant Kenyon was not confessed to hinder and defraud the plaintiff; that the notes and the judgments, entered thereon in favor of the defendants, Carter, Walker and Shepard, were not given or entered to delay or defraud the plaintiff or other creditors of Clarke, Radcliffe & Co.; that the judgments in favor of the defendants, Carter, Walker and Shepard, were in all respects fair; that the judgment confessed by the defendants, Clarke, Radcliffe & Co., in favor of the defendant Kenyon, was a valid judgment, and, as thereafter amended, was valid; that the complaint be dismissed, as against the defendants, Gershon P. Kenyon, Carter, Shepard and Walker, with costs, and that the defendant Kenyon is entitled to receive out of the funds in the hands of the receiver, as assignee, the sum of $100, besides costs.

*Hamilton Wallis*, for the appellant.

*Lucien Oudin* and *Warren W. Foster*, for the respondents.

O'Brien, J.:

The plaintiff is a judgment-creditor of the firm of Clarke, Radcliffe & Co., and brings this action against that firm, its general

assignee for the benefit of creditors and five of its judgment-creditors, by confession, to set aside said assignment and judgments as fraudulent and void on the ground that all the defendants entered into a fraudulent combination among themselves to hinder, delay and defraud the plaintiff and other creditors of said firm, and to evade the provisions of chapter 503 of the Laws of 1887, prohibiting preferences in assignments for the benefit of creditors exceeding one-third of the assets of the assigning debtor.

The case was before this court upon a former appeal, and in the absence from the record of the requisite certificate showing that it contained all the evidence, it was held that where the record does not show that it contains all the evidence the finding of the lower court on questions of fact will not be reviewed on appeal. It was also then stated that " the single circumstance that a judgment is confessed at or about the same time that the debtor executes a general assignment does not, of itself, standing alone, and irrespective of the other facts connected with the transaction, necessarily require the conclusion that the judgment is a part of the assignment. (10 N. Y. Supp., 634.) The record now before us is accompanied by the statement that it contains all the evidence, and, therefore, we can, and it becomes important to determine the facts proved upon the trial. It appears that the firm of Clarke, Radcliffe & Co., in the latter part of April, 1888, were unable to continue their business and decided upon a general assignment for the benefit of their creditors. On the twenty-fifth of April the firm was actually indebted, among others, to the defendant Gershon P. Kenyon, in the sum of $107,190; to the defendant Benjamin Carter in the sum of $17,000; to the defendant William E. Shepard in the sum of $5,600 or thereabouts, and to the defendant John E. Walker in the sum of $1,500 or thereabouts.

On this date the members of the firm went to the office of their attorneys, one of whom subsequently was chosen as their assignee, and then and there prepared the general assignment and confessions of judgments, and these were all executed by all the members of the firm on that date and about the same time. The same afternoon the general assignment was taken into possession by one of the firm and handed to one of their attorneys, who was the partner of the assignee. Thereupon the confessed judgments were entered in the

office of the clerk of this court, executions issued thereon to the sheriff and levies made upon the property of the firm in this city. Transcripts of these judgments, except the one in favor of Kenyon, were taken by an employee of the attorneys for the firm to Montgomery county, in this State, and a transcript of Kenyon's judgment, by the latter's attorney, to the same place. On the morning of the twenty-sixth of April they were filed in the clerk's office of Montgomery county, executions issued thereon, and the property of the firm stored in a warehouse in Amsterdam was levied upon by the sheriff. Upon the same day, the twenty-sixth, the messenger sent by the attorneys for the firm telegraphed that levies had been made under the executions in Montgomery county, and thereafter, on the same day, one of the firm took the assignment from the possession of his attorney, the partner of the assignee, and delivered it to the assignee, who thereupon executed the assignment, and it was filed as required by law.

The consideration of a judgment in favor of one Foye having been successfully impeached, and the general assignment itself having been set aside upon the ground of fraud, the learned trial judge refused to disturb the other judgments, and from such refusal this appeal is taken. These facts, beyond a reasonable doubt, show that the assignment and confessions of judgment together constituted a single transaction for the disposition of all the firm's property, then upon the verge of insolvency. They were all drawn and prepared at the same time and at the same place by the same parties, and were executed at substantially the same time. These acts were undoubtedly the result of a common scheme by which it was sought to make a disposition of the debtor's property, and therein to give a preference to those to whom the judgments were confessed. That instruments of this character, executed under those circumstances, are to be considered as one instrument is well settled. ( *White* v. *Cotzhausen,* 129 U. S., 329; *Sweetser* v. *Smith,* 22 Abb. N. C., 319; *Kessell* v. *Drucken,* 23 id., 1.) There is much force, therefore, in the suggestion that as the assignment and judgments constituted a single transaction, parts of which the court held to be fraudulent, that thereby the whole became tainted with fraud. In other words, it is claimed that the assignment and judgments, though contained in separate and distinct documents, constituted in law but a single instrument.

There are like instances of the law being thus applied to separate documents as in the case of a mortgage, which may consist of a deed and a separate agreement of defeasance, both together constituting a single instrument. So a lease may consist of a lessor's covenant executed separately from a lessee's covenant, both together constituting a single lease, If the judgments are to be regarded as a part of the general assignment, it would seem to follow, logically and legally, that where a part is fraudulent, that avoids the whole. If the preferences sought to be given were in the instrument of assignment itself, and this was held to be fraudulent, the preferences, however valid, would fall with that instrument.

If, therefore, the judgments and assignment are to be regarded as a single transaction or instrument, the judgments become engrafted in and an integral part of the instrument of assignment, the same as though contained therein. Why, as here, where there is shown a single scheme to make a general assignment for the benefit of creditors, should any distinction be made between preferences in and those outside of the assignment? As was said in *Spelman* v. *Freedman* (54 Hun., 409), " when the debtor has formed the determination to voluntarily dispose of his whole estate and has entered upon that determination, it is immaterial into how many parts the performance or execution of his determination may be broken. The law will regard all his acts having for their object to effect the disposition of his estate as parts of a single transaction."

But there is another and distinct ground upon which these judgments must be set aside. The question we would now consider is not whether the judgments were made for the purpose of hindering, delaying or defrauding creditors, but whether or not these judgments, being part of a scheme to give preferences, were not obnoxious to the statute (chap. 503 of the Laws of 1887) and, therefore, void. The facts show that the judgments and assignment were parts of a plan for the disposition of all the debtor's property and an attempt and effort, as part of that scheme, to give preferences forbidden by law. Not only the circumstance of time, but the withholding of the assignment itself, although executed by the debtors, until after levies were made under the judgments, is confirmatory of this view.

In *White* v. *Cotzhausen* (*supra*), in commenting upon the case of

*Preston* v. *Spaulding* (120 Ill., 208), the opinion proceeds. "The Supreme Court of Illinois, considering the question whether the preferential judgments obtained in that case were within the prohibition of the act of 1887, said : 'The statute is silent as to the form of the instrument or instruments by which an insolvent debtor may effect an assignment. * * * It will be observed this act does not assume to interfere in the slightest degree with the action of a debtor while he retains the dominion of his property. Notwithstanding this act he may now, as heretofore, in good faith sell his property, mortgage or pledge it to secure a *bona fide* debt, or create a lien upon it by operation of law, as by confessing a judgment in favor of a *bona fide* creditor. But when he reaches the point where he is ready, and determines, to yield the dominion of his property, and makes an assignment for the benefit of his creditors, under the statute, this act declares that the effect of such assignment shall be the surrender and conveyance of all his estate, not exempt by law, to his assignee, rendering void all preferences and bringing about the distribution of his whole estate equally among his creditors ; and we hold that it is within the spirit and intent of the statute that when the debtor has formed a determination to voluntarily dispose of his whole estate, and has entered upon that determination, it is immaterial into how many parts the performance or execution of his determination may be broken, the law will regard all his acts, having for their object and effect the disposition of his estate, as parts of a single transaction ; and on the execution of the formal assignment it will, under the statute, draw to it, and the law will regard as embraced, within its provisions, all prior acts of the debtor, having for their object and purpose the voluntary transfer or distribution of his estate to or for creditors ; and if any preferences are shown to have been made or given by the debtor to one creditor over another in such disposition of his estate full effect will be given the assignment, and such preference will, in a court of equity, be declared void and set aside as in fraud of the statute."

In *Abegg* v. *Schwab* (23 Abb. N. C., 7), subsequently affirmed upon another ground in *Abegg* v. *Schwab* (31 N. Y. St. Rep., 139), it was held that "judgments confessed by debtors about to make an assignment for benefit of creditors, the effect of which judgments will be to prefer creditors beyond the amount of one-third in value

of the assigned estate, after deduction of wages, costs, etc., in evasion of the Laws of 1887 (chap. 503), which prohibits preference in excess of one-third, are void if made as parts of one plan for the disposal of all their property."

This decision followed the rule laid down in *White* v. *Cotzhausen* (129 U. S., 329). A distinction, however, is to be observed between the Illinois statute, the construction of which was involved in that case, and the New York statute. The former made preferences in violation of the statute void, while our statute only renders preferences in excess of one-third void.

A grave question is, therefore, presented under our statute, as to whether any greater penalty is to be attached to illegal preferences than such as the statute itself imposes. For this reason I assume the learned judge writing the opinion of this court upon the appeal in *Abegg* v. *Schwab* (*supra*), was disposed to question the soundness of the conclusion above quoted as to the effect of an illegal preference upon the entire judgment.

This, however, is no longer an open question in this court, for in *Spelman* v. *Freedman* (54 Hun, 409) the principle enunciated in *Abegg* v. *Schwab* was distinctly held. In *Stein* v. *Levy* (55 Hun, 381–385), the presiding justice, referring to *Spelman* v. *Freedman* (*supra*) says: "It was held in that case that judgments which were confessed as part and parcel of a scheme resulting in an assignment, whereby all the debtor's property was devoted to the payment of preferred creditors, should not be allowed to stand as the assignment and confession of judgments must necessarily be considered together, they having been part and parcel of a single scheme and were plain violations of the law in question."

If right in our assumption that the assignment and judgments were parts of a single scheme or transaction for the disposal of all the insolvent debtor's property, these cases are controlling. While, therefore, the trial judge was right in concluding upon the evidence that the judgments themselves were not fraudulent, still he seems to have overlooked the consideration of the question as to whether the judgments did not violate the statute forbidding preferences.

It has been urged by the respondent that as the assignment itself has been set aside and no longer exists, that the upholding of the judgments would not contravene the statute which can only be

invoked where an undue preference is given in a general assignment for the benefit of creditors. The logical conclusion flowing from such an argument would be, that if the assignment was valid the judgments would be void ; but that the setting aside of the assignment for fraud would leave the judgments of binding force and effect. Thus we would reach a legal absurdity by holding that where an illegal preference is sought to be made, the court will hold the judgments void if the assignment is valid, and if the assignment is fraudulent the judgments will be upheld.

It is unnecessary for us to determine what results may flow from this conclusion as to the judgment-creditors' liability to account to the plaintiff for the amounts received by them respectively under their judgments. Whether the plaintiff can compel the defendants to account for such sums received, or not, cannot control the conclusion to be reached as to the invalidity of the judgments if otherwise warranted.

Our conclusion, therefore, is that the judgment appealed from should be reversed and a new trial ordered, with costs to plaintiff to abide the event.

VAN BRUNT, P. J.:

I concur in the result of this opinion, but I think there is an additional ground why the judgment should be reversed. It is apparent that the confession of these judgments was part of the fraudulent scheme of the judgment-debtors by which they, by means of another fraudulent judgment and a fraudulent assignment, sought to defraud their creditors.

It is true that the judgment-creditors were not privy to this fraud, but that does not validate their judgments, because if a judgment is suffered in pursuance of a fraudulent intent of the debtor the judgment is void, irrespective of the intent of the creditor.

DANIELS, J., concurred.

Judgment reversed and new trial ordered, with costs to plaintiff to abide event.