CENTRAL NATIONAL BANK OF THE CITY OF NEW YORK AND OTHERS, RESPONDENTS, *v.* SIGMUND J. SELIGMAN AND OTHERS, APPELLANTS.

*Assignment — different acts constituting one transaction — creditors fraudulently preferred must account for the whole amount received — effect of the appointment of a receiver — an unavoidable objection considered first on appeal.*

On July 2, 1888, the firm of Seligman Bros. & Co. having made a general assignment, certain judgment-creditors of the firm brought an action, by a judgment in which, made January 23, 1889, the assignment was declared void and a receiver was appointed.

Subsequently they brought an action upon the same, and upon other judgments held by them against the firm, to set aside the general assignment made by it and also to set aside judgments recovered against it by one Hertz and by one Moses, and an assignment of book accounts made by it to one Sonneborn, upon the ground that these acts constituted preferences exceeding in amount one-third of the assignor's estate.

As relief they demanded that the so-called preferred creditors pay over to them the sums which the creditors had collected.

*Held,* that as it appeared that the assignment, the recovery of the judgments, and the assignment of the book accounts, were acts done within a few minutes of each other, they were properly regarded as one transaction, the effect of which was to give a fraudulent preference.

That the fact that the assignment was filed a few minutes before the judgments were entered was not material.

That as the preference thus secured was fraudulent, the creditors benefited thereby were not entitled to hold any part of the sums realized, not even to the extent of one-third of the assets assigned, but must account to the plaintiffs for the whole amount.

That as, however, it appeared upon the trial that, in an action by the same plaintiffs upon certain of the same judgments, a receiver had been appointed in that action, in which the assignment had been set aside, the right of action and of property, so far as concerned these judgments, was in him, and the only recovery permissible in this action must be upon the judgments not included in the former action.

That as this objection went to the right of action and could not be remedied it was available on appeal, although it had not been pleaded and there was no allegation that the receiver was a necessary party.

That as a receiver of the property of the firm was appointed in the former action, the court would not appoint another receiver of the same property in the present action.

APPEAL by the defendants, Sigmund J. Seligman, Philip Seligman, Abraham H. Hertz, Isaac H. Hertz, Benjamin Hertz, Moses

H. Moses, Jonas Sonneborn and Simon Herman, as assignee of the firm of Seligman Bros. & Co., from a judgment of the Supreme Court entered in the office of the clerk of the city and county of New York, on the 10th day of June, 1891, in favor of the planitiffs, after a trial at the New York Special Term before the court, declaring void a general assignment, and also an assignment of book accounts made by Seligman Bros. & Co., and also certain judgments against that firm, and directing the judgment-creditors and the assignee of the book accounts to make certain transfers to a receiver appointed by the judgment, and directing payment by the receiver of the plaintiffs' judgment from the moneys so received by him.

Upon the trial the plaintiff read in evidence a judgment of the Supreme Court made January 23, 1889, in which the present plaintiffs were plaintiffs and the members of the firm of Seligman Bros. & Co. and their assignee, Simon Herman, were defendants. This judgment declared the assignment void. The assignment was claimed to be defective in that it failed to state, in compliance with chapter 298 of the Laws of 1888, the residence and kind of business carried on by the debtor at the time of making the assignment and the place at which it was so carried on.

The complaint in this action set up the same judgments which were set forth in the complaint in the prior action, the judgment in which was put in evidence, and also, in the case of the Central National Bank, other subsequent judgments recovered by it.

*A. J. Dittenhoefer*, for the appellants.

*Blumensteil & Hirsch*, for the respondents.

O'BRIEN, J.:

Certain of the defendants, composing the firm of Seligman Bros. & Co., made a general assignment on the 2d day of July, 1888. Thereafter the plaintiffs' judgment-creditors commenced this action to set aside two judgments recovered by the defendants Hertz and Moses, respectively, and also an assignment of book accounts made to the defendant Sonneborn, upon the ground that they constitute preferences exceeding one-third of the assignor's estate, in violation of chapter 13 of the Laws of 1889. The judgment demanded is that these so-called preferred creditors pay over to the plaintiffs the

# ERRATA.

On page 616, volume 64 Hun, chapter "298 of the Laws of 1888," should read "294 of the Laws of 1888," and chapter "13 of the Laws of 1889," should read "503 of the Laws of 1887."

sums they have collected. From the judgment rendered in favor of plaintiffs this appeal is taken. The general assignment, each of the judgments and the transfer of accounts were created on the same day, July second; these various documents being drawn in the office of the counsel for the debtors.

As indicative of the intent of the parties, evidence was offered to show that the demand notes, upon which the judgments are based, were given so as to authorize suit in lieu of other notes outstanding in the hands of creditors, none of which would mature until long after July second. The assignment and judgments were all filed within five minutes of each other, though appellants laid special stress upon the fact, it is true, that the judgments were not docketed until after the assignment was made and filed.

Under the executions immediately thereafter issued a levy was made by the sheriff, and subsequently, upon the latter being indemnified, nearly all of the assigned estate was taken and sold, except the account assigned to Sonneborn and about four thousand nine hundred dollars realized by the assignee. It is thus made to appear that although over thirty thousand dollars was realized out of the assets of the insolvent firm, by the creditors preferred, there came into the hands of a receiver, out of the $4,900 received by the assignee, a net surplus, after providing for expenditures, of about five hundred and forty-four dollars and eighty-one cents.

Although some question is made as to the total value of the debtors' property, at the time of the assignment, and as to whether or not the preference exceeded one-third of the assets, the finding of the learned trial judge, we think, is amply supported, not only by the figures already given, but by the fact that the actual value of all the property, as scheduled, was but $35,621, while the liabilities, actual and contingent, were over three hundred thousand dollars, and, as we have already seen, the amount actually realized was less then the scheduled value of the property.

It is not necessary for us to go over in detail the evidence which warrants the conclusion reached by the trial court, that the judgments, executions, transfers of accounts, and the former assignment, constituted together the general assignment, which was made on July second. They were all executed and carried into effect simul-

taneously, and the result was to dispose of all the property of the insolvent debtors to three or four preferred creditors, who were thus given not only more than one-third, but practically the entire assets of the insolvent firm.

As we have already stated, much emphasis has been placed upon the fact that they were entered after the assignment, and evidence was presented tending to show that the assignors refused " to allow these judgments to be entered before the assignment, or to give any preference by judgment." Expressions, however, of this character, on the part of the assignors, cannot destroy the force and effect of their actions. The question presented was whether or not all these transactions were part of one scheme, the effect of which was to create forbidden preferences. If so, under the authorities the assignments and the judgment must be held to be fraudulent and void.

It is immaterial, as held in many cases, into how many parts the performance or execution of the scheme may be broken.

As said in *White* v. *Cotzhausen* (129 U. S., 329), the law will regard all acts having for their object and effect the disposition of the estate as parts of a single transaction. It can, therefore, make no difference whether the judgments precede or follow the assignments, if they are part of the single plan or scheme to give unlawful preferences. It is conceded that the general assignment was void on its face, and upon the entry of judgment the preferred judgment-creditors, as well as all the others, treated it as absolutely void, and proceeded to enforce their claims as though no assignment had been made.

As said in the case of the *First National Bank* v. *Bard* (32 N. Y. St. Rep., 1010), the single circumstance that a judgment was confessed, at or about the same time the debtor executes a general assignment, does not of itself, standing alone, and irrespective of other facts connected with the transaction, necessarily require the conclusion that the confessed judgment is a part of the assignment.

Here, also, the fact that the judgments were allowed to be taken on the same day, to be entered after the assignment, standing alone, so far as any presumption or inference of fraud to be drawn therefrom, would not be as strong in favor of attacking creditors as judgments upon which levies were made on the same day, but which

were docketed prior to the assignment. The effect of the judgments are, however, to be considered, with all other circumstances, for the purpose of determining the intent of the parties; and where the manner in which the judgments are allowed, and subsequently enforced, are inconsistent with any other view than that they were part of the scheme to give an unlawful preference, the fact of whether such judgments were entered prior or subsequent to the assignment must be immaterial. It becomes, therefore, simply a question as to whether the evidence justified the conclusions of the learned trial judge, and, upon a review thereof, we find no ground which would justify the setting aside of the conclusions reached, that the judgments, transfers of accounts and general assignment were all part and parcel of one transaction or scheme, and that the defendant creditors knew that the assignment was contemplated, thus participating in the fraud.

The law, as to the effect upon the judgment, has already been settled by this court, upon the second appeal, in the case of the *First National Bank* v. *Bard* (59 Hun, 529). Excepting the fact of the judgments being entered subsequent instead of, as in that case, prior to the assignment, the facts in the two cases are very similar. The learned trial judge was, therefore, right in holding, upon the findings and conclusions made, that the assignment and judgments were fraudulent and void. This brings us, however, to the question which was expressly reserved in the Bard case, as to what results flow in respect to the preferred creditors' liability to account to the plaintiff in a creditor's action, such as this, for the amount received by them respectively under their judgments. Here, therefore, the question is squarely presented as to whether or not the plaintiff can compel the defendant to account for such sums received under their judgments. Upon the part of the appellants it is contended that an action will not lie by one creditor to compel another creditor to pay over to him moneys received by the latter in payment of a *bona fide* debt, even if they are the proceeds of an unlawful preference under a general assignment. As authority for this proposition, reference is made to the case of *Knower et al.* v. *The Central National Bank* (124 N. Y., 552) and the *Leather Manufacturers' Bank* v. *Halstead* (Id., 674). These cases are undoubted authority for the doctrine that payment by an assignee to a preferred creditor   *   *   *   of

a debt honestly due him, pursuant to the directions in the assignment, before any lien has been obtained upon the fund, is effectual to vest title in such creditor to the money so paid, although the assignment, in an action subsequently commenced, is adjudged fraudulent and void as against creditors.

We do not, however, regard these cases as being in point. A vast difference in principle exists between a case of an honest creditor, who, in payment of an honest debt, receives from an assignee, pursuant to directions in an assignment, the amount of a preferred claim, before the lien of another creditor has attached thereto, and the case of a creditor who has obtained payment of his debt by means of a fraudulent scheme upon the part of the assignor to give a preference which is prohibited by the statute. This latter case, which is the one here presented in principle, more closely resembles the cases of *Berger* v. *Varrelmann* (127 N. Y., 281) and *Manning* v. *Beck* (decided December 1, 1891). The former (*Berger* v. *Varrelmann*) was a suit in aid of the assignment, and in that respect is to be distinguished from the one here brought, which is a creditor's action to reach the property for the benefit of the plaintiffs. It was therein held that the provision of the act of 1887, limiting the amount of preference  *  *  *  is not confined to preferences in the assignment itself, but applies to those created by a separate instrument, in contemplation of the assignment; it includes all instrumentalities which the insolvent debtor, in contemplation of a general assignment, voluntarily employs to give a preference, and, it seems, the want of knowledge on the part of a creditor, so preferred, that an assignment was contemplated, will not avail to validate the preference.

In that case, as in this, the question was also presented as to whether or not the preference should be scaled down to one-third so as to conform to the statute, or whether the preferred creditors were obliged to turn over the entire amount realized. Though there was a strong dissent, the opinion of the court was against the right of the preferred creditors under circumstances, where the judgment were set aside, to retain the proceeds of any preference, even to the extent of an amount not exceeding one-third of the estate of the assignors.

*Manning* v. *Beck* (*supra*) was, like this, a creditor's action to

reach the property for the benefit of the plaintiffs, and though the judgment in favor of the plaintiffs was reversed, because there was no finding that the bill of sale attacked was executed in contemplation of making an assignment, the reasoning of the court would seemingly lead to the conclusion, and is, therefore, a strong argument in favor of plaintiffs' view, that the effect of a determination that judgments are fraudulent and void is to deprive the creditors, so fraudulently preferred, of any benefit which they may have derived under such judgments. We are of opinion, therefore, that creditors holding *bona fide* debts, who secure illegal and fraudulent preferences, are not entitled to any benefit by reason thereof, and that where, as in this case, the preferences consist of judgments or an assigned account, that moneys realized thereunder cannot be retained by them.

This, however, brings us to what may be regarded as the most serious question in the case. The assignment having been set aside in a prior action, instituted by these same plaintiffs, and a receiver appointed, the question is presented whether or not the title to all of the debtor's property did not pass to such receiver, and to him alone, and as to whether the plaintiffs here have any standing to recover from the defendant judgment-creditors the moneys they received.

It is insisted by respondents that this objection is not available for the reason that it is not set up in the answer, nor is any defense interposed that the receiver is a necessary party. It must be remembered, however, that this objection is not simply that the proceedings are irregular, but that the plaintiffs have failed to establish a cause of action, and have, by the introduction of the decree appointing the receiver, shown that they have no standing in court. Where, therefore, this objection is not taken by the answer, the question still remains whether this failure to set up that the right of action exists in another person, operates to make the defendant liable to an improper plaintiff, or to give to such plaintiff the cause of action that exists in favor of another.

We are of opinion that whereas in this case a decree was offered by the plaintiff and admitted in evidence, showing that, with respect to certain of the judgments, which are included with others and made the basis of this action, such judgments were in a former

action also used for the purpose of setting aside the general assignment, which resulted favorably to the plaintiff, and in which action a receiver was appointed, such judgments are not again available in another action. And though the objection is not taken by answer it may be raised for the first time upon appeal, it being clear that the objection, even though attention had been called to it upon the trial, could not have been obviated.

In this connection it should be remembered that the complaint did not allege the former decree nor did it contain any reference to the former action; and, therefore, there was nothing in reference thereto which could have been denied by the answer. Where, therefore, as here, in an equity action, during the progress of the trial, facts are presented to the court showing that the plaintiff has no standing in court or that the right which he seeks to enforce is one that exists in favor of another person, it becomes the duty of the court to dismiss the complaint; and where this is not done such an objection is available upon appeal where it is shown that it could not have been obviated by other proof.

The rule as laid down in *Passavent* v. *Bowdoin* (15 N. Y. Supp., 8), is thus stated: "If the plaintiffs have such a judgment (a prior judgment setting aside the assignment), then they cannot bring this action based upon the same judgments which formed the basis of that decree to again have the assignment set aside; and, so far as their complaint is concerned, seeking to get a decree setting aside this assignment upon its face establishes no cause of action, it appearing that they have thereby obtained such relief on behalf of the very judgments upon which this action was based. It further appears that for the protection of this very judgment, in the action in which the decree was entered declaring this assignment to be null and void, they have had a receiver appointed of all the assigned estate. Our attention has not been called to any principle by which a judgment-creditor, after having set aside an assignment upon the ground of fraud, can maintain an action as such judgment-creditor for the purpose of collecting the assets belonging to the estate, a receiver thereof upon behalf of such judgment-creditor having been appointed."

The application of this rule to the facts here presented will require that the judgment appealed from should be modified by

omitting the judgments which were included in the former action, and which the decree identifies as follows:

The judgments entered in favor of the Central National Bank, on July thirty-first, for $4,154 and $4,255 respectively, and on August third, for $4,330.01 in addition to all the judgments in favor of Vietor and Achelis, which are three in number, and are set forth in the complaint and decree herein. The decree as modified should require that as to all of these judgments enumerated the complaint should be dismissed.

So far, however, as the other judgments included in the complaint are concerned, and which were not included in the former action, the plaintiffs being entitled to relief herein, the decree should be affirmed

In one other respect we are also of opinion that the decree should be modified, and that has reference to the selection of a new receiver.

It is evident that by reason of the way in which the matter was presented, no attention having been particularly called to the proceedings in the former action in which a receiver was appointed, the learned trial judge felt at liberty to designate another receiver. The effect, however, of the existence of two receivers of the property of the same defendants would result in confusion, and possibly litigation to determine their respective rights to the fund, which, under the decree, is required to be paid over by the defendants. Under such circumstances, the receiver first appointed, unless he has been discharged, should have possession of the property. Our conclusion, therefore, is that the judgment should be modified as directed, and, as so modified, should be affirmed, without costs.

VAN BRUNT, P. J., and PATTERSON, J., concurred.

Judgment modified as directed in opinion, and, as modified, affirmed, without costs.