# WHITE *v.* COTZHAUSEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 129. Argued December 13, 14, 1888. — Decided January 28, 1889.

The Voluntary Assignment Act of the State of Illinois of 1877, which went into effect July 1, 1877, was intended to secure equality of right among all the creditors of the debtor making the assignment, and was a remedial act, to be liberally construed.

In Illinois the surrender by an insolvent debtor of the dominion over his entire estate, with an intent to evade the operation of the Voluntary Assignment Act of that State, and the transfer of the whole or substantially the whole of his property to a part of his creditors in order to give them a preference over other creditors, whether made by one instrument or more and whatever their form may be, operates as an assignment under that act; the benefit of which may be claimed by any unpreferred creditor who will take appropriate steps in a court of equity to enforce the equality contemplated by it.

A creditor in Illinois who attempts to secure to himself an illegal preference
of his debt by means of a conveyance to him of the property of his
debtor when insolvent, to the exclusion of other creditors, is not thereby
debarred, under the operation of the Voluntary Assignment Act, from
participating in a distribution under that act of all the debtor's property,
including that thus illegally conveyed to him.

THE case was stated by the court in its opinion as follows:

This is an appeal from a decree declaring two conveyances
of real property in Illinois, a bill of sale of numerous pictures,
a judgment by confession in one of the courts of that State
pursuant to a warrant of attorney given for that purpose, and
certain transfers of property accompanying that warrant, to be
void as against the appellee, Cotzhausen, a judgment creditor
of Alexander White, Jr. It is assigned for error that the de-
cree is not supported by the evidence. Besides controverting
this position, the appellee contends that the conveyances, judg-
ment by confession and transfers were illegal and void under
the provisions of the act of the General Assembly of Illinois, in
force July 1, 1877, concerning voluntary assignments for the
benefit of creditors. Ill. Sess. Laws of 1877, 116; 1 Starr. &
Curtis Annotated Stats. Ill. 1303.

The record contains a large amount of testimony, oral and
written; but the principal facts are as follows:

Alexander White, Sr., died, intestate, in the year 1872; his
wife, Ann White, four daughters, Margaret, Elsie, Mary S. and
Annie, and two sons, Alexander and James B., surviving him.
Each of the children, except James, was of full age when the
father died. At the request of the mother, and with the assent
of his sisters, Alexander White, Jr., qualified as administrator
and in that capacity received personal assets of considerable
value. With their approval, if not by their express direction,
he undertook the management of the real estate of which his
father died possessed; making improvements, collecting rents,
paying taxes and causing repairs to be made. He received
realty in exchange for stock in a manufacturing company and
in part exchange for the homestead, taking the title in his own
name.

After the death of the father, the widow and children remained together as one household, the expenses of the family and of each member of it being met with money furnished by Alexander White, Jr., out of funds he received from time to time and deposited in bank to his credit as administrator. But no regular account was kept, showing the amount paid to or for individual members of the family.

In 1878 it was determined by the widow and children to have an assignment of dower and a partition of the real property; and proceedings to that end were instituted in the Circuit Court of Cook County, Illinois. Before the close of that year, or in the spring or summer of 1879, having failed to obtain from the administrator a satisfactory account of the condition of the estate, they consulted an attorney, who, upon investigation, ascertained (using here the words of the appellants' counsel) that Alexander White, Jr., "had lost the entire personal estate, and had nothing except his interest as an heir in certain of the real estate with which to make good his losses." It appeared, as is further stated, that he had mortgaged some of the real property the title to which had been taken in his name; had anticipated rents on other property; had exchanged lands for stock in a heating and ventilating company; had allowed taxes to accumulate; and had, besides, induced some members of the family to guarantee his notes to a large amount. Upon these disclosures being made, the property was put under the immediate charge of the younger son, and the attorney with whom the mother and sisters had advised was directed to collect the amount due from Alexander White, Jr. Thereupon, a friendly accounting was had, which resulted in a report by him to the Probate Court, on the 18th of July, 1879, of his acts and doings as administrator during the whole period from the date of his appointment, April 9, 1872, to July 21, 1879. The report admits a balance due from him as administrator of $89,646.05, and charges him, "by virtue of the statute," (Rev. Stat. Ill. 1874, c. 3, § 113,) with $40,123.80, being interest on that sum from January 21, 1875, to July 21, 1879, at the rate of ten per cent per annum; in all, the sum of $129,769.85. He does not seem to have asserted any claim

whatever for his services as administrator or for managing the real property.

That report was approved by the Probate Court, which made an order, July 22, 1879, directing the said sum of $129,769.85 to be distributed and paid by the administrator as follows: To the widow, $43,256.61, and to each of the other children, $14,418.87.

It should be stated, in this connection, that, on the 16th of July, 1879, two days before the report to the Probate Court, the proceedings in the partition suit were brought to a conclusion by a decree assigning dower to the widow, and setting off specific parcels of land to Margaret and Alexander respectively, and other parcels to the remaining heirs jointly.

On the same day, Alexander White, Jr., executed two conveyances, one to his sisters (except Margaret) and his brother James, jointly, for part of the lands assigned to him by the decree of partition, and the other to his sister Margaret for the remaining part; the former deed reciting a consideration of $56,859.20, which is about the aggregate of the several amounts subsequently directed to be paid by the administrator to his brother and sisters (except Margaret), while the latter deed recited a consideration of $14,214.80, which is about the sum directed to be paid to his sister Margaret. Two days later, July 18, 1879, Alexander White, Jr., executed to his mother, brother and sisters (except Margaret) a bill of sale of his interest in certain pictures which had come to his hands as administrator. And, three days thereafter, July 21, 1879, he executed to his mother a note, accompanied by a warrant of attorney to confess judgment, and by a conveyance and transfer of certain real and personal property as collateral security for the note. Subsequently, September 4, 1879, pursuant to that warrant of attorney, judgment was entered against Alexander White, Jr., for $43,807.50, in the Circuit Court of Cook County. It is not claimed that any money was paid to him in these transactions; and it is admitted that the sole consideration for his transfers of property to the members of his family was his alleged indebtedness to them respectively.

By the final decree in these consolidated causes, it was ad-

judged that the two conveyances of July 16, 1879, the bill of sale of July 18, 1879, and the judgment by confession of September 4, 1879, and the transfers accompanying the warrant of attorney of July 21, 1879, were made without adequate consideration and with intent to hinder, delay and defraud the appellee Cotzhausen, who was found by the decree to be a creditor of Alexander White, Jr., in the sum of $27,842.22, the aggregate principal and interest of four several judgments obtained by him against White, in 1881 and 1882. The debts for which these judgments were rendered originated in the early part of 1878, in a purchase from Cotzhausen of nearly all the stock of the American Oleograph Company, whose principal place of business was Milwaukee, Wisconsin. In this purchase Alexander White, Jr., was interested. It is to be inferred from the evidence that the principal object he had in making it was to transfer the office of the company to one of the buildings owned by the family in Chicago, and to start or establish his younger brother in business. His mother and sisters were evidently aware of his purchase and approved the object for which it was made.

It may be here stated that Margaret White died unmarried and intestate before the decree in this cause was entered, but the fact of her death was not previously entered of record. The parties to the present appeal, however, have, by written stipulation filed in this cause, waived all objections they might otherwise make by reason of that fact. It is further stipulated that the appellants are the only heirs at law of Margaret White. The appellee waives all objections to the present appeal on the ground that Alexander White, Jr., did not join in it.

Mr. *Charles M. Osborn* and Mr. *Ira W. Buell* for appellants.

The case developed by the evidence shows a preference given by Alexander to his family in the payment of the debts due to them, and we understand the law to be well settled that a debtor resident of Illinois, although insolvent or in failing cir-

cumstances, may prefer one creditor to the exclusion of others, when done in good faith and for a valuable consideration. That this is the law of the State of Illinois, we cite: *Tomlinson* v. *Matthews,* 98 Illinois, 178; *Payne* v. *Miller,* 103 Illinois, 442; *Eads* v. *Thompson,* 109 Illinois, 87. See also *Bean* v. *Patterson,* 122 U. S. 496.

Upon the questions of fact, we contend that all that the evidence in this case shows is, that Alexander White did give to his mother, brother and sisters a preference in the payment of debts justly due from him to them. That not only is there no evidence to prove either of the hypotheses upon which the bill was based, or that upon which the decree was rendered, but that the evidence adduced by the appellee himself expressly contradicts the allegations of the bill, and also the findings on which the decree is based.

*Mr. Enoch Totten* (with whom was *Mr. John C. Spooner* on the brief) for appellee.

No question of law is presented by the assignment of error. The contest turns on the weight of evidence. We invoke the familiar doctrine that *every presumption on appeals is in favor of the finding and decree below,* and that the burden is on the appellants to show error. *Mann* v. *Rock Island Bank,* 11 Wall. 650. The rule on reviewing the conclusion of a master in chancery is equally applicable here. *Medsker* v. *Bonebrake,* 108 U. S. 66, 71; *Tilghman* v. *Proctor,* 125 U. S. 136, 149.

Without reference to the violated provisions of the state statute, the question in this case is not merely one of inadequacy or want of consideration, but it is also as to the good faith of the transaction. "A sale may be void for bad faith though the buyer pays the full value of the property bought. This is the consequence, where his purpose is to aid the seller in perpetrating a fraud upon his creditors, and where he buys recklessly, and with guilty knowledge." *Clements* v. *Moore,* 6 Wall. 299, 312. A sale by one *insolvent of all his property, is presumptively* fraudulent, because the necessary effect of

such a sale must be to hinder and delay creditors. *Walcott v. Almy*, 6 McLean, 23; *Power v. Allston*, 93 Illinois, 587; *Singer v. Jacobs*, 3 McCrary, 638; *Burdick v. Gill*, 2 McCrary, 486. And this presumption is strengthened where the sale has been made to one in *confidential relations* with him. 1 Smith's Leading Cases, 50. Where *all* the debtor's estate was conveyed to his *wife or near relatives* or children, for an *inadequate* consideration, it was held to be a badge of fraud. *Pickett v. Pipkin*, 64 Alabama, 520; *Thomas v. Beck*, 39 Connecticut, 241. And where the consideration was *inadequate, coupled* with an agreement for his *future support.* *Egery v. Johnson*, 70 Maine, 258; *Church v. Chapin*, 35 Vermont, 223.

The application of the above principles of law to this case readily appears. The appellants contend that a debtor in failing circumstances may prefer one creditor to the exclusion of others, when he does so in good faith and for valuable consideration.

Such was the drift of judicial decisions generally, but the Voluntary Assignment Act of the State of Illinois, of 1877, (which went into effect July 1st, 1877,) radically changed the law on this subject in that State.

Section 13 of that act is as follows: "Every provision in *any assignment* hereafter made in this State, providing for the payment of one debt or liability in preference to another, shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof." Laws of Illinois, 1877, page 120.

In view of this legislation the appellee contends that — ignoring the question of consideration and good faith altogether — the several conveyances and confession of judgment by Alexander White, were, in effect, a general assignment, giving preferences, and consequently void, because in contravention of that statute.

The evidence shows that these several conveyances of real and personal property, were made about the same time, and after the debtor had resolved to voluntarily dispose of the whole of his estate, and that thereby he substantially stripped

himself of all his assets without reservation or exception.
Late decisions of the highest court of the State of Illinois
leave no doubt that the above statute forbids *preferences* in
such cases. *Preston* v. *Spaulding*, 120 Illinois, 208; *Strong* v.
*Chenay*, Chicago Legal News, Dec. 1, 1888. See also *Freund*
v. *Yeagerman*, 26 Fed. Rep. 819; *Winner* v. *Hoyt*, 66 Wisconsin, 229.

MR. JUSTICE HARLAN delivered the opinion of the court.
After stating the case, he continued:

Too much stress is laid by the appellee upon the fact that
Alexander White, Jr., after qualifying as administrator, was
authorized by his mother and sisters to control, in his discretion, both the real and personal estate of which his father
died possessed. The granting of such authority cannot be
held to have created any lien in favor of his creditors, upon
their respective interests. Nor can it be said that they surrendered their right to demand from him an accounting in
respect to his management of the property. Upon such accounting, he might become indebted to them; and, to the
extent that he was justly so indebted, they would be his creditors, with the same right that other unsecured creditors had
to obtain satisfaction of their claims. The mode adopted by
them to that end, with full knowledge as well of his financial
condition as of the fact that he was being pressed by Cotzhausen, was to take property on account of their respective
claims. After he had executed the conveyances, bill of sale,
warrant of attorney and transfers, to which reference has been
made, he was left without anything that could be reached by
Cotzhausen. So completely was he stripped by these transactions of all property that, subsequently, when his deposition
was taken, he admitted that he owned nothing except the
clothing he wore. He recognized his hopelessly insolvent condition, and formed the purpose of yielding to creditors the
dominion of his entire estate. And it is too plain to admit
of dispute that in executing to his mother, sisters and brother
the conveyances, bill of sale, warrant of attorney and trans-

fcrs in question his intention was to give them, and their intention was to obtain a preference over all other creditors. What was done was in execution of a scheme for the appropriation of his entire estate by his family to the exclusion of other creditors, thereby avoiding the effect of a formal assignment.

The first question, therefore, to be considered is, whether the several writings executed by Alexander White, Jr., for the purpose of effecting that result, may be regarded as, in legal effect, one instrument, designed to evade or defeat the provisions of the statute of Illinois, known as the Voluntary Assignment Act, in force July 1, 1877.

The first section of that statute provides: " That in all cases of voluntary assignments hereafter made for the benefit of creditor or creditors, the debtor or debtors, shall annex to such assignment an inventory, under oath or affirmation of his, her, or their estate, real and personal, according to the best of his, her, or their knowledge; and also a list of his, her, or their creditors, their residence and place of business, if known, and the amount of their respective demands; but such inventory shall not be conclusive as to the amount of the debtor's estate, but such assignment shall vest in the assignee or assignees the title to any other property, not exempt by law, belonging to the debtor or debtors at the time of making the assignment, and comprehended within the general terms of the same. Every assignment shall be duly acknowledged and recorded in the county where the person or persons making the same reside, or where the business in respect of which the same is made has been carried on; and in case said assignment shall embrace lands, or any interest therein, then the same shall also be recorded in the county or counties in which said land may be situated."

Other sections provide for publication of notices to creditors; for the execution by the assignee of a bond and the filing of an inventory in the County Court; for the report of a list of all creditors of the assignor; and for exception by any person interested to the claim or demand of any other creditor.

The sixth section provides " that at the first term of the said

County Court, after the expiration of three months, as afore-
said, should no exception be made to the claim of any credi-
tor, or if exceptions have been made, and the same have been
adjudicated and settled by the court, the said court shall order
the assignee or assignees to make, from time to time, fair and
equal dividends (among the creditors) of the assets in his or
their hands, in proportion to their claims," etc.

The eighth section declares that "no assignment shall be
declared fraudulent or void for want of any list or inventory
as provided in the first section."

The thirteenth section is in these words : "Every provision
in any assignment hereafter made in this State providing for
the payment of one debt or liability in preference to another
shall be void, and all debts and liabilities within the provis-
ions of the assignment shall be paid *pro rata* from the assets
thereof."

The main object of this legislation is manifest. It is to
secure equality of right among the creditors of a debtor who
makes a voluntary assignment of his property. It annuls
every provision in any assignment giving a preference of one
creditor over another. No creditor is to be excluded from
participation in the proceeds of the assigned property because
of the failure of the debtor to make and file the required
inventory of his estate and the list of his creditors. Nor, if
such a list is filed, is any creditor to be denied his *pro rata*
part of such proceeds because his name is omitted, either by
design or mistake upon the part of the debtor. The difficulty
with the courts has not been in recognizing the beneficent
objects of this legislation, but in determining whether, in view
of the special circumstances attending their execution, particu-
lar instruments are to be treated as part of an assignment,
within the meaning of the statute.

The leading case upon this subject in the Supreme Court of
Illinois is *Preston* v. *Spaulding*, 120 Illinois, 208. In that case
the members of an insolvent firm, in anticipation of bank-
ruptcy, made, within a period of less than thirty days, four
conveyances of their individual estate to near relatives, and
various payments of money to her relatives, on alleged debts.

After these conveyances and payments, and with full knowledge of impending failure, the members of the firm held a conference with their legal advisers before the expiration of said thirty days, respecting the measures to be adopted by them and the shape their failure was to assume. It was determined that they should make a voluntary assignment, but that preference be given to certain creditors by executing to them what are called judgment notes. The assignment in form was made, but on the same day and before it was executed, the creditors to whom the notes were given caused judgment by confession to be entered thereon, and immediately, and before the deed of assignment was or could be filed, caused execution to be issued and levied, whereby they took to themselves the great bulk of the debtor's estate. The trustee, named in the assignment, having refused to attack the preferences thus secured, a creditor brought suit in equity upon the theory that the giving of the judgment notes and the making of the deed of assignment were parts of one transaction, and, consequently, the preferences attempted were illegal and void under the statute. The Supreme Court of Illinois, considering the question whether the preferential judgments obtained in that case were within the prohibitions of the act of 1877, said: "The statute is silent as to the form of the instrument or instruments by which an insolvent debtor may effect an assignment. . . . If, then, these preferences are to be held to be within the 'provisions' of the assignment or 'comprehended within its general terms,' it must be because they fall within the intent and spirit of the act. It will be observed, this act does not assume to interfere, in the slightest degree with the action of a debtor, while he retains the dominion of his property. Notwithstanding this act, he may now, as heretofore, in good faith sell his property, mortgage or pledge it to secure a *bona fide* debt, or create a lien upon it by operation of law, as, by confessing a judgment in favor of a *bona fide* creditor. But when he reaches the point where he is ready, and determines, to yield the dominion of his property, and makes an assignment for the benefit of his creditors, under the statute, this act declares that the effect of such assignment shall be the surrender and

conveyance of all his estate, not exempt by law, to his assignee
— rendering void all preferences and bringing about the distri-
bution of his whole estate equally among his creditors; and we
hold that it is within the spirit and intent of the statute, that
when the debtor has formed a determination to voluntarily
dispose of his whole estate, and has entered upon that deter-
mination, it is immaterial into how many parts the perform-
ance or execution of his determination may be broken, — the
law will regard all his acts having for their object and effect
the disposition of his estate, as parts of a single transaction;
and, on the execution of the formal assignment, it will, under
the statute, draw to it, and the law will regard as embraced
within its provisions, all prior acts of the debtor having for
their object and purpose the voluntary transfer or disposition
of his estate to or for creditors; and if any preferences are
shown to have been made or given by the debtor to one cred-
itor over another in such disposition of his estate, full effect
will be given the assignment, and such preferences will, in a
court of equity, be declared void, and set aside as in fraud of
the statute."

After setting out the details of the plan devised to secure
certain creditors a preference in advance of the filing of the
deed of assignment, the court further said: "It will be ob-
served that all this was strictly in accordance with the *forms*
of law, but will any one deny that a most palpable fraud was,
in fact, perpetrated upon appellee, Spaulding, by the debtors,
or that the acts of the debtors were in fraud of the statute?
. . . This voluntary assignment act is in its character reme-
dial, and must, therefore, be liberally construed, and no insol-
vent debtor having in view the disposition of his estate, can be
permitted to defeat its operation by effecting unequal distribu-
tion of his estate by means of an assignment, and any other
shift or artifice under the forms of law; and whatever ob-
stacles might be encountered in other courts of this State,
. . . a court of equity, when properly invoked, was bound
to look through and beyond the *form*, and have regard to the
substance, and having done so, to find and declare these pref-
erential judgments void, under the statute, and to set them

aside." See also *Miner's National Bank's Appeal,* 57 Penn. St. 193, 199; *Winner* v. *Hoyt,* 66 Wisconsin, 227, 239; *Wilks* v. *Walker,* 22 So. Car. 108, 111.

We agree with the Supreme Court of Illinois that this statute, being remedial in its character, must be liberally construed; that is, construed "largely and beneficially, so as to suppress the mischief and advance the remedy." That court said in *Chicago, &c. Railroad* v. *Dunn,* 52 Illinois, 260, 263: "The rule in construing remedial statutes, though it may be in derogation of the common law is, that everything is to be done in advancement of the remedy that can be done consistently with any fair construction that can be put upon it." See also *Johnes* v. *Johnes,* 3 Dow, 1, 15. If, then, we avoid over-strict construction, and regard substance rather than form; if effect be given to this legislation, as against mere devices that will defeat the object of its enactment, the several writings executed by Alexander White, Jr., all about the same time, to his mother, sisters and brother, whereby, in contemplation of his bankruptcy, and according to a plan previously formed, he surrendered his entire estate for their benefit, to the exclusion of all other creditors, must be deemed a single instrument, expressing the purposes of the parties in consummating one transaction, and operating as an assignment or transfer under which the appellee, Cotzhausen, may claim equality of right with the creditors so preferred. It is true there was not here, as in *Preston* v. *Spaulding,* a formal deed of assignment by the debtor under the statute. But of what avail will the statute be in securing equality among the creditors of a debtor who, being insolvent, has determined to yield the dominion of his entire estate, and surrender it for the benefit of creditors, if some of them can be preferred by the simple device of not making a formal assignment, and permitting them, under the cover or by means of conveyances, bills of sale or written transfers, to take his whole estate on account of their respective debts, to the exclusion of other creditors? If Alexander White, Jr., intending to surrender all his property for the benefit of his creditors, and to stop business, had excepted from the conveyances, bill of sale and transfers executed to

his mother, sisters and brother, a relatively small amount of property, and had shortly thereafter made a general assignment under the statute, it could not be doubted, under the decision in *Preston* v. *Spaulding*, and in view of the facts here disclosed, that such conveyances, bill of sale and transfers would have been held void as giving forbidden preferences to particular creditors; and his assignment would have been held, at the suit of other creditors, to embrace not simply the property owned by him when it was made, but all that he previously conveyed, sold and transferred to his mother, sisters and brother. But can he, having the intention to quit business and surrender his entire estate to creditors, be permitted to defeat any such result by simply omitting to make a formal assignment, and by including the whole of his property in conveyances, bills of sale, and transfers to the particular creditors whom he desires to prefer? Shall a failing debtor be allowed to employ indirect means to accomplish that which the law prohibits to be done directly? These questions must be answered in the negative. They could not be answered otherwise without suggesting an easy mode by which the entire object of this legislation may be defeated.

We would not be understood as contravening the general principle, so distinctly announced by the Supreme Court of Illinois, that a debtor, even when financially embarrassed, may in good faith compromise his liabilities, sell or transfer property in payment of debts, or mortgage or pledge it as security for debts, or create a lien upon it by means even of a judgment confessed in favor of his creditor. *Preston* v. *Spaulding*, *ubi supra; Field* v. *Geoghegan*, 125 Illinois, 70. Such transactions often take place in the ordinary course of business, when the debtor has no purpose, in the near future, of discontinuing business or of going into bankruptcy and surrendering control of all his property. A debtor is not bound to succumb under temporary reverses in his affairs, and has the right, acting in good faith, to use his property in any mode he chooses, in order to avoid a general assignment for the benefit of his creditors. We only mean, by what has been said, that when an insolvent debtor recognizes the fact that he can no longer go on in busi-

ness, and determines to yield the dominion of his entire estate, and in execution of that purpose, or with an intent to evade the statute, transfers all, or substantially all, his property to a part of his creditors, in order to provide for them in preference to other creditors, the instrument or instruments by which such transfers are made and that result is reached, whatever their form, will be held to operate as an assignment, the benefits of which may be claimed by any creditor not so preferred, who will take appropriate steps in a court of equity to enforce the equality contemplated by the statute. Such we think is the necessary result of the decisions in the highest court of the State.

The views we have expressed find some support in adjudged cases in the Eighth Circuit, where the courts have construed the statute of Missouri providing that "every assignment of lands, tenements, goods, chattels, effects and credits made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor in proportion to their respective claims." Referring to that statute, Krekel, J., said, in *Kellog* v. *Richardson*, 19 Fed. Rep. 70, 72 — following the previous case of *Martin* v. *Hausman*, 14 Fed. Rep. 160 — "a merchant may give a mortgage or a deed of trust in part or all of his property, to secure one or more of his creditors, thus preferring them, but he cannot convey the whole of his property to one or more creditors and stop doing business. Such turning over and virtually declaring insolvency brings the instrument or act by which it is done within the assignment law of Missouri, which requires a distribution of the property of the failing debtor for the benefit of all the creditors in proportion to their respective claims. Such is the declared policy of the law; it places all creditors upon an equal footing." So in *Kerbs* v. *Ewing*, 22 Fed. Rep. 693, where Judge McCrary, referring to the Missouri statute, said: "No matter what the form of the instrument, where a debtor, being insolvent, conveys all his property to a third party, to pay one or more creditors, to the exclusion of others, such a conveyance will be construed to be an assignment for the benefit of all the creditors; the preference being in contravention of the assignment

laws of this State." Again, in *Freund* v. *Yaegerman*, 26 Fed.
Rep. 812, 814, it was said by Treat, J., that the conclusion
reached by Mr. Justice Miller and Judges McCrary, Krekel,
and himself, was, "that under the statute of the State of
Missouri concerning voluntary-assignments, when property was
disposed of in entirety or substantially — that is, the entire
property of the debtor, he being insolvent — it fell within the
provisions of the assignment law. The very purpose of the
law was that no preference should be given. No matter by
what name the end is sought to be effected, it is in violation
of that statute. You may call it a mortgage, or you may
make a confession of judgment, or use any other contrivance,
by whatever name known, if the purpose is to dispose of an
insolvent debtor's estate, whereby a preference is to be effected,
it is in violation of the statute." See also *Perry* v. *Corby*, 21
Fed. Rep. 737; *Clapp* v. *Dittman*, 21 Fed. Rep. 15; *Clapp* v.
*Nordmeyer*, 25 Fed. Rep. 71.

If Alexander White, Jr., had made a formal assignment of
his entire property in trust for the benefit, primarily or exclu-
sively, of his mother, sisters and brother, as creditors, its ille-
gality would have been so apparent that other creditors would
have been allowed to participate in the proceeds of sale. By
the conveyances, bill of sale, confession of judgment and
transfers, all made about the same time, and pursuant to an
understanding previously reached, he has effected precisely
the same result as would have been reached by a formal
assignment to a trustee for the exclusive benefit of his mother,
brother and sisters. The latter is forbidden by the letter of
the statute, and the former is equally forbidden by its spirit.
Surely, the mere name of the particular instruments by which
the illegal result is reached, ought not to be permitted to stand
in the way of giving the relief contemplated by the statute.
Courts of equity are not to be misled by mere devices, nor
baffled by mere forms.

It remains only to consider the effect of these views upon
the decree below. We have already seen that the Circuit
Court proceeded upon the ground that the conveyances, bill
of sale, confession of judgment and transfers by Alexander

White, Jr., were made without adequate consideration, and with intent to hinder, delay and defraud the appellee. Upon these grounds it gave him a prior right in the distribution of the property. We are not able to assent to this determination of the rights of the parties; for the mother, sisters and brother of Alexander White, Jr., were his creditors, and, so far as the record discloses, they only sought to obtain a preference over other creditors. But their attempt to obtain such illegal preference ought not to have the effect of depriving them of their interest, under the statute, in the proceeds of the property in question, or justify a decree giving a prior right to the appellee. It was not intended, by the statute, to give priority of right to the creditors who are not preferred. All that the appellee can claim is to participate in such proceeds upon terms of equality with other creditors.

It results that the decree below is erroneous, so far as it directs the property, rights and interests therein described to be sold in satisfaction primarily of the sums found by the decree to be due from Alexander White, Jr., to the appellee. The case should go to a master to ascertain the amount of all the debts owing by Alexander White, Jr., at the date of said conveyances, bill of sale and transfers. In respect to the amounts due from him to his mother, sisters and brother, respectively, it is not necessary, at this time, to express any opinion, further than that the accounting in the Probate Court between them is not conclusive against the appellee. It will be for the court below to determine, under all evidence, what amounts are justly due from Alexander White, Jr., to his mother, sisters and brother, taking into consideration all the circumstances attending his management of the property, formerly owned by his father, whether real or personal.

*To the extent we have indicated, the decree is reversed, each side paying one-half the costs in this court; and the cause is remanded, with a direction for further proceedings not inconsistent with this opinion.*

The CHIEF JUSTICE did not sit in this case or participate in its decision.