TOMPKINS *et al. v.* FIRST NAT. BANK OF PENN YAN *et al.*

(*Supreme Court, Special Term, Yates County.* January 29, 1892.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—PREFERENCES.

Laws 1887, c. 503, declaring that, "in all general assignments" any preference therein shall not be valid "except to the amount of one-third in value of the assigned estate," does not prevent a debtor from transferring all his property to a single creditor, for the *bona fide* purpose of paying a debt, since such a transfer is not a general assignment, within the meaning of the act.

2. STATUTES—CONSTRUCTION.

A court has no authority to extend a law beyond the fair and reasonable meaning of its terms because of some supposed policy of the law, or because the legislature did not use proper words to express its meaning.

Action by Charles M. Tompkins and others against the First National Bank of Penn Yan and others to set aside a transfer of property made by Charles Hunter in payment of a debt. Complaint dismissed.

*W. F. Cogswell,* for plaintiffs.   *E. Harris,* for defendants.

RUMSEY, J.   The facts of this case are simple, and none of them are in dispute. In April, 1890, and for several years before that time, Charles Hunter had been in business in Penn Yan. In that month, he was in debt to the amount of about $36,000, with assets amounting to not more than twenty one or two thousand. Of his debts, he owed about $29,000 to the First National Bank of Penn Yan. About April 19, 1890, Hunter determined to give up business. He advised the president of the bank of his intention, and proposed to turn over to the bank all his property, to be applied, so far as it would go, in payment of what he owed that corporation. After some talk as to the legality of this course the proposition was accepted. Hunter assigned all his personal property and conveyed all his real estate to the bank. The property thus transferred was appraised at $21,767.70, which was a fair value. The bank surrendered to Hunter his notes to that amount in payment. There was no fraud or bad faith in the matter, and Hunter only intended to pay, and the bank to receive payment of, the debt due to it. Hunter did not make, and did not intend to make, a general assignment, and that fact was known to the officers of the bank. The plaintiffs, who were also creditors of Hunter, having obtained judgments against him and procured executions to be returned unsatisfied, have brought this action to attack the transfer to the bank. They claim that it is illegal because the effect of it is to violate that provision of the general assignment act which forbids preferences for over

one-third in value of the assigned estate. For this reason alone the plaintiffs ask that the transfer to the bank shall be set aside, either entirely, or so far as to permit the bank to retain only one-third of the property assigned, and that the remainder may be devoted *pro rata* to the payment of the other debts of Hunter.

The statute under which this claim is made is part of the general assignment act of 1877. It prescribes that, "in all general assignments" thereafter made, "any preference created therein shall not be valid except to the amount of one-third in value of the assigned estate." Laws 1887, c. 503. It has been always held that a debtor was at liberty to devote all his property to the payment of one creditor, and that, in the absence of fraud, any other creditor could not complain of such action. So fully recognized has been this rule that when, in the bankrupt law of the United States, it was thought proper to abolish it as to cases within that statute, not only were preferences forbidden, but the law avoided any payment of a debt by a bankrupt within four months of the filing of his petition, unless such payment was made in the regular course of business.

The single question presented here is whether the provision of the general assignment law, quoted above, takes away from an insolvent debtor the power to pay any creditor in full, where such payment would require more than one-third of his assets, and would leave other creditors unprovided for, when the debtor does not make a general assignment. In deciding this question, regard must be had to the rules which have been established for the construction of statutes. One of these rules is that statutes are not presumed to make any innovation upon the common law, further than the case absolutely requires, (*Burnside* v. *Whitney*, 21 N. Y. 148,) or, as the books state it, that statutes in derogation of the common law are to be strictly construed, (Suth. St. Const. §§ 207, 400.) This rule applies to all statutes, whether they are those called "remedial" or not. Id. § 207. In construing this statute the first thing to be noticed is that it is only "a general assignment act," regulating and controlling those instruments, and that the section in question, so far as its express terms go, applies only to preferences in general assignments. The act of Hunter can only be brought within this statute by extending the words of the statute beyond their usual and ordinary meaning. The transfer of all his property to the bank, while it may be said to be a preference, was not in any way a preference created in a general assignment. The term "general assignment" has a well-defined meaning. It means an assignment of all one's property for the benefit of his creditors. It necessarily includes an assignee who shall, by the terms of the instrument, or as an inference from those terms, take as a trustee for the creditors. I cannot conceive of a general assignment, as the term now is used in this state, in which the assignee shall not be a trustee for the creditors. Burrill, Assignm. §§ 2–4. The transfer to the bank had none of these elements. There could be under it, by its terms, no surplus, nor any contingent or future interest in the property left in the assignor, which might accrue to the benefit of the creditors. The case is not within the general assignment act, unless it can be said that the policy of our law or the intention of the legislature requires that such transfers as this should be declared to be within the "equity of the statute," as it is called, and therefore a violation of it. The case of *White* v. *Cotzhausen*, 129 U. S. 329, 9 Sup. Ct. Rep. 309, proceeded upon that theory in the supreme court, but not in the lower courts, where the transfer was held void as made with intent to hinder, delay, and defraud creditors, (pages 333–345,) upon which ground the judgment might well be sustained on the facts.

The rule of construction which extends a law beyond the fair and reasonable meaning of its terms because of some supposed policy of the law, or because the legislature did not use proper words to express its meaning, is not a satisfactory rule, and is a dangerous one to apply. It was said by the cir-

cuit court of the United States that there is no more dangerous rule than that of equitable construction, so called, and that it is the duty of courts to defer to the expression of the legislature, to the letter of the statute, when free from ambiguity and doubt. *Priestman* v. *U. S.*, 4 Dall. 30 (note.) The case in which that rule was laid down was affirmed by the supreme court in the same volume. To my mind the notion that a judge should interpret a statute according to his ideas of what the policy of the law ought to be, and not according to what the words of the statute say, is not tenable, and such a rule of construction should not be followed. Indeed, the tendency in these days has been to abandon the so-called equitable construction, and interpret statutes as they are read. Suth. St. Const. §§ 413, 414; Sedg. St. & Const. Law, 265. It is quite evident that the case of *White* v. *Cotzhausen* was decided largely, if not entirely, upon the views of the court as to what the policy of the legislature was, and that the court, to carry out that supposed policy, enlarged and extended the statute considerably beyond the cases to which the letter of it applies. In spite of the high character of that court, I cannot give my assent to this decision. I feel more free to examine the question *de novo* because of the fact that the decision in *White* v. *Cotzhausen* has been repudiated by the supreme court of Illinois, ( *Weber* v. *Mick*, 131 Ill. 520, 23 N. E. Rep. 646; *Farwell* v. *Nilsson*, 133 Ill. 45, 24 N. E. Rep. 74,) and the case will no longer be followed even by the court which decided it, (*Supervisors* v. *U. S.* 18 Wall. 71.)

But I think the construction contended for by the plaintiffs does not agree with the policy of our laws. The legislature has never made provision for an involuntary general assignment, but has always left it to the debtor to say whether he will make an assignment or not. In this respect the policy of this state has been different from that of the United States, as shown in the bankrupt law. No way is provided in this state by which the property of a debtor can be compulsorily distributed among his creditors, nor by which the creditors can take it, except upon execution or by attachment. When taken in that way, it goes to the creditor first acquiring a lien, although the effect may be to devote all of the property to the payment of his debt, and leave nothing for other creditors. Nor has it ever been asserted that the debtor is under any obligations to prevent such a disposition of his property; but liens thus acquired have always been upheld in the absence of fraud. *Varnum* v. *Hart*, 119 N. Y. 101, 105, 23 N. E. Rep. 183. Indeed, although the debtor has made a general assignment, a preference of a just debt, made before its execution to a creditor who has no knowledge of the intention to assign, is valid, although the preference exceeds one-third of the assets of the debtor. *Manning* v. *Beck*, (N. Y. App.) 29 N. E. Rep. 90. This case recognizes as still existing the rule that a failing debtor may pay one creditor to the exclusion of all others, and practically disapproves the case of *White* v. *Cotzhausen*, *supra*. If, therefore, this law was to be construed so as to accord with what might be thought to be the general policy of the legislature, although not expressed in that statute, the courts would still labor under great difficulty to find a reason to extend its meaning and application so far as the plaintiff proposes. But, if we abandon all efforts to look for the true meaning of this law outside of the four corners of the statute, there can be little difficulty in construing it. By its terms, it applies to general assignments, and includes and forbids only preferences created in those instruments. If there is no general assignment, there is nothing for the mandate of the statute to seize upon, and no preference which it condemns. So long as the law has not made it compulsory upon a failing debtor to make a distribution of his property among all of his creditors, and confines its regulations solely to the case where one is made, it is not for the courts to take the property and distribute it as they think the policy of the law should direct. To hold otherwise in this case would, I think, be extending the general assignment law beyond its

plain meaning, and limit the power of the debtor, and restrict the privilege of the diligent creditor, to an extent which can be done only by the law-making power. The complaint must therefore be dismissed.