CHARLES M. TOMPKINS AND OTHERS, APPELLANTS, *v.* CHARLES HUNTER AND OTHERS, RESPONDENTS.

*Fraudulent conveyances — a contemporaneous agreement that the debtor will not thereafter make a general assignment.*

Charles M. Tompkins and others, under indebtednesses existing on and prior to April 19, 1890, were judgment-creditors of Charles Hunter, who was insolvent to his own knowledge and to that of his largest creditor, a bank. On April 21, 1890, Hunter determined to discontinue business and transferred all his property to the bank in payment of a *bona fide* indebtedness to it, under an arrangement between the bank and Hunter that he should not thereafter make a general assignment for the benefit of his creditors.

In an action brought by Tompkins and others, the judgment-creditors of Hunter, attacking this transfer, it was

*Held,* that the action could be maintained.

That the agreement between the bank and Hunter, that the latter should not after his transfer to the bank make an assignment, made such transfer fraudulent as to the other creditors of Hunter.

That thereby the bank undertook to control the future conduct of its debtor, in order that he should *not,* by the act of an assignment, raise the question of an improper preference.

The conditions which must exist, in order that a debtor may lawfully transfer all his property to one creditor for a *bona fide* debt, considered.

APPEAL by the plaintiffs, Charles M. Tompkins, Ray Tompkins, William M. Tompkins, Henry L. Fassett, Elwood B. Crocker, Stewart D. Tompkins, John S. Sheppard, Baldwin's Bank of Penn Yan, Calvin Russell and Clarence T. Birkett, from a judgment of the Supreme Court, entered in the office of the clerk of Yates county on the 3d day of February, 1892, dismissing the complaint, with costs, after a trial by the court at the Yates Special Term.

The court, among other things, found, in reference to an alleged fraudulent transfer of property by one Charles Hunter to the First National Bank of Penn Yan, as follows :

12. That at the time of making said transfer to said First National Bank of Penn Yan, as aforesaid, the said Charles Hunter had no intention of making a general assignment for the benefit of his creditors; and he never did, in fact, make any such assignment.

13. That during the negotiations for the transfer of said property to the said First National Bank of Penn Yan, in payment of the

debts as aforesaid, it was stated that the said property was all the property of said Hunter; that the defendant did not intend to make a general assignment, and the question whether or not such a transfer could be made to said bank without violation of law was a subject of consultation between said Hunter and the president of said bank and its legal adviser, and the said transfer in payment, as aforesaid, was made as the result of said consultation.

14. That all the negotiations between the said Hunter and the president of said bank, preceding the execution of the conveyance and the assignment hereinbefore mentioned, had reference to the sale by Hunter to the bank of his real and personal property in papment of his debts.

*William F. Cogswell,* for the appellants.

*Edward Harris,* for the respondents.

MACOMBER, J. :

The plaintiffs, severally, are judgment-creditors of the defendant Charles Hunter. The consideration for the judgment in each case arose upon an indebtedness existing prior to the 19th day of April, 1890, the time when the principal transaction involved in this appeal took place. Prior to this date Mr. Hunter had been engaged in business in Penn Yan as a grocer and produce dealer. He was possessed of a considerable amount of real estate. He owed debts amounting in all to $36,000, the most of which, namely, the sum of $29,000, was owing to the defendant, the First National Bank of Penn Yan. He was at this time unable to pay the whole of his indebtedness, and was actually insolvent to his knowledge and to that of the officers of this bank. Thereupon the debtor determined to discontinue his business, and announced such determination to the president of the bank. He proposed that he should convey and assign to the bank all his real and personal property not exempt from levy and sale on execution in payment of his liabilities to that corporation so far as the same would go. This proposition was accepted; and on the 21st day of April, 1890, the debtor transferred, in writing, by assignment and conveyance to the bank all of his property, real and personal, except such as was, in fact, exempt from levy and sale on execution, including all debts and book accounts due to him.

The amount of his property so turned over to the bank was $21,767.70. For this property the bank surrendered to Mr. Hunter notes to that amount, less the sum of $1,600, which last-named sum was applied upon a note for a greater amount held by the bank upon which Hunter was liable. This property was received by the bank in actual payment of a *bona fide* indebtedness to it by Mr. Hunter, to whom his notes were surrendered. It is found by the trial court that, at the time of making this transfer, the debtor had no intention of executing a general assignment for the benefit of his creditors, and that, in fact, he never did make any such assignment. During the negotiations between the debtor and the bank officers it was stated that this property was all the property which Hunter possessed. The court found, as a fact, "that the defendant did not intend to make a general assignment, and the question whether or not such a transfer could be made to said bank without violation of law, was a subject of consultation between said Hunter and the president of said bank and its legal adviser, and the said transfer in payment aforesaid was made as the result of said consultation." (13th finding.) The bank immediately took possession, and has continued in possession, of the property since that time. The sixteenth finding is as follows: "That, in making said transfer, the intention of said Hunter was simply to pay his debts to the said bank so far as his property was sufficient therefor, and the intent of the said bank was simply to receive payment of the debt owing from Hunter."

As a conclusion of law, the learned justice at Special Term decided that such transfer was not such a preference as is forbidden by the general assignment act and was valid, and he accordingly dismissed the plaintiff's complaint.

There was no finding upon the question which was presented by the pleadings, namely, whether or not the transfer above mentioned was absolutely and wholly fraudulent and void as to creditors. Such issue was not specially and affirmatively determined in the findings one way or the other, but the court put its judgment solely on the ground that the transaction was not such a preference as is forbidden by the assignment act.

The general question is whether Charles Hunter, being insolvent to his own knowledge and to the knowledge of the defendant, the First National Bank of Penn Yan, and having determined to aban-

don further efforts to continue his business, could legally make a transfer to the bank of all his property liable for his debts in payment of the debt owing by him to the bank, leaving, to the knowledge of the officers of the bank, other creditors wholly unpaid and unprovided for, when the transaction is accompanied by an arrangement between the debtor and the creditor by which the debtor should not afterwards make an assignment of his property under the general assignment act lest the transfer might be questioned in any future proceedings in the court.

This precise question has not, so far as I know, been actually decided by the courts of this State. The case of *Dillingham* v. *Flack* (17 N. Y. Supp., 879), held that when a grantor disposed of all his property, for the benefit of a portion of his creditors only, such conveyance is illegal and void, and the title of one claiming under a bill of sale thereof will not prevail against an attaching creditor. *Manning* v. *Beck* (54 Hun, 102), contains the views entertained at that time by this court where it was held, in substance, that a voluntary surrender by an insolvent debtor of dominion over his entire estate and the transfer of the whole, or substantially the whole, of his property to a portion of his creditors in order to give them a preference over others, whether made by one instrument or more, whatever form the same might take, when such transferred portion was an unlawful preference in fact, the assignment itself may be assailed by a creditor and the same set aside as a fraud upon the general assignment act. It was there that the case of *White* v. *Cotzhausen* (120 U. S., 329), was, for the first time, I think, attempted to be applied to the general assignment act of this State. The case then before us arose, however, not upon an appeal from a judgment, but from an order of the Special Term appointing a receiver and granting an injunction. The case was, therefore, presented upon *ex parte* affidavits. It there appeared clearly, as it seemed to the court, that it was the purpose of the debtor, first, to transfer all of his property to a favored creditor, and then, lest such transfer should be assailed, in form to make an assignment under the general assignment act to a person whom he believed that he could control, and who would not avail himself of the rights and privileges of a general assignee to bring actions to set aside fraudulent transfers of property by his assignor.

It there appeared abundantly that the creditor well knew of this scheme. That case was afterwards tried at the Special Term, and judgment was pronounced in favor of the judgment-creditors against the validity of the transfer, and against the validity of the assignment. The case was appealed to this court, and the decision of the Special Term was affirmed upon the opinion of the learned justice at the Special Term, as well as upon the former opinion of this court upon the appeal from the order appointing the receiver, etc. No state of facts was brought to our attention at that time which differed in any essential particular from those appearing upon the appeal from the order, yet, on appeal, the Court of Appeals decided that the trial court had failed to find that the creditor knew that it was the intention of the debtor, after stripping himself of his property in his favor, to go through the form of making an assignment, and accordingly a new trial was granted by that court. (*Manning* v. *Beck*, 129 N. Y., 1.)

This case, however, is not the Manning and Beck case, but exactly the converse of it. The evidence before us shows, and the findings of the learned justice are to the effect that in this instance the creditor, having taken alarm at the recent discussions of the legal questions arising upon transactions where one creditor had absorbed all the property of the debtor to the injury of other creditors, was careful to provide in the arrangement which he made with his willing debtor that no assignment under the general assignment act should be made. What is the legal bearing upon the general question of this particular fact?

Is an agreement, by which the debtor should make an assignment after dispossessing himself of his property, of any greater moment than an agreement that he should not make an assignment of his property? In both instances the creditor undertakes to, and does, so far as an agreement can do it, control the actions of his debtor. At the time of the arrangement in the Manning and Beck case, by which an assignment should actually be made, it was thought, by most respectable counsel, that it would be the means of making effective the transaction by which one creditor had taken all the property of the debtor who was owing many creditors. But later on, in the year 1890, when this transaction was completed, it was thought, by equally diligent creditors and competent lawyers, that

it was better and safer not to have any such agreement as there was, or was supposed to be in the Manning case; and in order to make the thing effective it was believed, undoubtedly, that it would be advisable to have an affirmative understanding that such an assignment should not, in fact, be made. It seems to me that the fact in the one case is as much of a fraud upon creditors at large as in the other case. Why should the creditor named in this action have concerned itself with any future matters pertaining to the debtor's estate if it were acting entirely above board, and only as an honest and diligent creditor may act; and who, when so acting, may, from an insolvent debtor, receive property in payment of his debt in whole or in part?

In the Manning and Beck case it was contended by counsel for the appellant that no one could bring an action to set aside such a transfer of property save the general assignee, and that creditors themselves could not do so, so long as there was an assignee who might do so. In this case no such contention is made. But, on the contrary, it is argued that, under the general rule (well recognized and repeatedly stated by the courts, that creditors may be paid out of the property of insolvent debtors when the transaction is an honest one), the creditor may take all of the property of a debtor and then prevent any inquiry as to the propriety of it, by making an arrangement by which the debtor himself should afterwards do no act by way of making an assignment, or otherwise, which should jeopardize or question the propriety of such a transfer. The very existence of such an arrangement shows an intent on the part of the parties to the transaction not only to elude that general provision of the assignment act which prevents an insolvent debtor, when making a general assignment for the benefit of his creditors, to apply more than one-third in value of his property as a preference, but shows further that the transaction is absolutely fraudulent.

It seems to me, therefore, that, under the evidence and the findings of fact, the agreement made between the debtor and the creditor showed that the transaction was wholly fraudulent as to creditors, as well as an attempt at evasion of the general assignment law, and cannot be allowed to stand.

The case of *Woodworth* v. *Hogdson* (35 N. Y. St. Rep., 964, affirmed in 129 N. Y., 669, without an opinion) contains, I venture to think, no doctrine contrary to this. In that case there was no

agreement whatever relating to the subject of making or not making an assignment. There the plaintiff had furnished, substantially, all of the capital to his son in order to set him up in the grocery business in the city of Rochester; and such business had proved to be a losing venture; and the son had become discouraged and wished to turn over the property to his father for his indebtedness, and accordingly did so; whereupon the father took possession of the property. That was exactly the transaction so repeatedly upheld by the courts, that a creditor may take from a debtor any or all of his property in payment of his debt, provided the transaction does not involve other matters rendering it void by reason of collision with some equitable principle, or with a statute of this State.

In fine, it is the attending agreement either to make an assignment, as was done in the Manning and Beck case, or not to make it, as was done in this case, in both of which the creditor undertook to control the future conduct of the debtor, which shows a fraudulent intent of the parties, and renders void the transfer of property, though made in payment of a *bona fide* debt

Since the foregoing opinion was prepared, the attention of the court has been called to the case of the *Central National Bank et al.* v. *Seligman et al.* (64 Hun, 615; 47 N. Y. St. Rep., 17, Sept., 1892), which, in principle and reasoning, singularly fortifies the views already expressed. That case differed in the special facts involved from *Manning* v. *Beck*, and from this one, in that it followed neither of them in the mode adopted in getting advantage of some creditors, but combined the essential properties of both. Seligman Bros. & Co., anxious to prefer certain creditors, confessed judgments and assigned certain accounts to them; and, in order that such judgments and transfer might not be attacked, the debtors made simultaneously a general assignment of all their property for the benefit of creditors, ostensibly under the general assignment law, and it was mutually arranged that the assignment should go on record five minutes before the confessed judgments, which was done. But the general assignment, in pursuance of the general intent of the parties, was so skillfully drawn as to be void on its face, and was so treated. It was reasoned by the parties that the judgments and transfers of the book accounts, good, as was thought, against everybody save the assignee, would be unassailable, and the desired preferences completely accomplished.

In an elaborate opinion the court held that such preferences were fraudulent and illegal, though made upon a *bona fide* indebtedness, and that the moneys realized thereon could not be retained by the creditors so preferred for any part of their indebtedness, and that they must account therefor to the plaintiffs, who were also creditors of Seligman Bros. & Co., and who obtained judgments subsequently to the assignment and confessions of judgments to the favored creditors.

For these reasons, I think, the judgment appealed from should be reversed.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment appealed from reversed and a new trial granted, with costs to abide the event.