TOMPKINS et al. v. HUNTER et al.

(Supreme Court, Special Term, Yates County. April, 1893.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCES.
   A transfer by an insolvent of all his property to one of several of his creditors, to be applied to the payment of a bona fide debt, is valid; not being a general assignment for the benefit of creditors, within the meaning of Laws 1887, c. 503, providing that, in all general assignments of the estates of debtors for the benefit of creditors, no preference shall be valid, except to the amount of one-third of the value of the assigned estate, etc.

2. RES ADJUDICATA—CONCLUSIVENESS OF JUDGMENT ON APPEAL.
   A judgment of the general term, reversing a judgment for defendant in an action by creditors to set aside such transfer, is not conclusive on a new trial, where such reversal was based on the assumption that there was an agreement between the debtor and creditor that the debtor should not make an assignment for the benefit of creditors, and it appears on the second trial that there was no such agreement.

Action by Charles M. Tompkins and others against Charles Hunter, the First National Bank of Penn Yan, and another, to have a

conveyance by the first to the second named defendant set aside, as in fraud of plaintiffs, and for other relief.　Complaint dismissed.

For former reports, see 18 N. Y. Supp. 234, reversed by 20 N. Y. Supp. 355.

William T. Morris, (William F. Cogswell, of counsel,) for plaintiffs. John T. Knox, for defendant Hunter.

Briggs & Sunderlin, (Edward Harris, of counsel,) for defendant First Nat. Bank of Penn Yan.

BRADLEY, J.　There is no substantial dispute about the facts. The defendant Hunter, for some time prior and up to April 21, 1890, had been engaged in the business of grocer and produce dealer at Penn Yan, N. Y.　He was then indebted to the defendant bank in about the sum of $29,000.　He had other creditors, and his entire indebtedness amounted to about $36,000.　On that day he conveyed all his real estate to the First National Bank of Penn Yan, and transferred to it all his personal property, except such as was exempt from levy and sale on execution.　This conveyance and transfer were made by Hunter to the bank, and taken by it, in payment of the sum of $21,790.70 of his indebtedness to it.　That sum was then so applied, and it was the fair value of the property. The plaintiffs were then creditors of Hunter, and afterwards they recovered judgments upon their claims against him.　After the executions issued upon the judgments were returned unsatisfied, they brought this action.　The first trial resulted in a judgment for the defendants, (18 N. Y. Supp. 234,) which was reversed, and a new trial granted, (65 Hun, 441, 20 N. Y. Supp. 355.)　It is now urged that the disposition of the present trial is controlled by that determination of the general term on the review of the first trial. The question there presented and determined must be regarded as effectually disposed of, for the purpose of this trial, and the views of the court, there given, followed here.　It was there assumed that at the time of the transaction between Hunter and the bank, which resulted in the conveyance and transfer made to the latter, there was an agreement or understanding between them that Hunter should make no general assignment for the benefit of his creditors. In the opinion of the court, delivered by Mr. Justice Macomber, it was said:

"The evidence before us shows, and the findings of the learned [trial] justice are to the effect, that in this instance the creditor, having taken alarm at the recent discussions of the legal questions arising upon transactions where one creditor had absorbed all the property of the debtor to the injury of other creditors, was careful to provide, in the arrangement which he made with his willing debtor, that no assignment under the general assignment act should be made. * * * Is an agreement by which the debtor should make an assignment after dispossessing himself of his property of any greater moment than an agreement that he should not make an assignment of his property?　In both instances the creditor undertakes to, and does, so far as an agreement can do it, control the action of his debtor. * * * Why should the creditor named in this action have concerned itself with any future matters pertaining to the debtor's estate, if it were acting entirely above board, and only as an honest and diligent creditor may act?　And

who, when so acting, may, from an insolvent debtor, receive property in payment of his debt, in whole or in part? * * * In fine, it is the attending agreement, either to make an assignment, as was done in the Manning and Beck Case, or not to make it, as was done in this case, in both of which the creditor undertook to control the future conduct of the debtor, which shows a fraudulent intent of the parties, and renders void the transfer of property, though made in payment of a bona fide debt."

It is evident that the conclusion of the general term was founded upon the construction there given to the evidence and findings,—that they established the fact that an agreement was made between the parties to the transaction that the debtor should not make a general assignment for the benefit of his creditors. This is further manifested in the opinion of the court, which, after referring to Woodworth v. Hodgson, [Sup.; 12 N. Y. Supp. 424,] proceeded:

"In that case there was no agreement whatever, relating to the subject of making or not making an assignment. There the plaintiff had furnished substantially all the capital to his son, in order to set him up in the grocery business in the city of Rochester, and such business had proved to be a losing venture; and the son had become discouraged, and wished to turn over the property to his father for his indebtedness, and accordingly did so, whereupon the father took possession of the property. That was exactly the transaction so repeatedly upheld by the courts,—that a creditor may take from a debtor any or all of his property in payment of his debt, provided the transaction does not involve other matters rendering it void by reason of collision with some equitable principle, or with some statute of this state."

The evidence on the second trial can bear no such construction as that given the evidence of the first trial, but on the contrary it now appears that nothing whatever was said on the subject of a general assignment, or of any assignment, for the benefit of the creditors of the defendant Hunter. The reasons, therefore, given for the result on the review of that trial are not applicable to the case, as presented upon the present trial; and the question is whether, upon the facts as they now appear, the plaintiffs are entitled to recover. At the time he turned over his property to the bank to pay his debt, Hunter was insolvent. It was taken by the bank, at a fair price, for that purpose, and the debt upon which the value of the property was applied was valid. It must be assumed, upon the evidence, that the transfer of the property was made and taken for that purpose without any intent, in fact, to defraud the creditors of Hunter; and although the officers of the bank, who transacted the business, were then advised of the other liabilities of the debtor, they were at liberty to seek and obtain payment of the debt due to it, so far as the property of such debtor would go in that direction, unless the doing so was in contravention of the statute which provides that:

"In all general assignments of the estates of debtors for the benefit of creditors, hereafter made, any preference created therein * * * shall not be valid, except to the amount of one-third of the value of the assigned estate, left after deducting such wages or salaries, and the costs and expenses of executing such trusts; and should said one-third of the assets of the assignor or assignors be insufficient to pay in full the preferred claims, to which, under the provisions of this action, the same are applicable, then said assets

shall be applied to the payment of the same pro rata to the amount of each said preferred claim." Laws 1887, c. 503.

This is an additional section (30) to chapter 466, Laws 1877, entitled "An act in relation to assignments of estates of debtors for the benefit of creditors." The assignments there referred to are those made to some person or persons, as assignee or assignees, in trust for the benefit of creditors of the assignors, and such is the import of the term, "general assignment for their benefit." The transfer to the bank does not, therefore, by its terms, come within the statute forbidding preferences in amount exceeding one-third in value of the property assigned. Nor can it be construed to be a general assignment, unless the policy of the law, as declared by that statute, is to prevent the transfer by an insolvent debtor (having other creditors) of all his property in payment of a debt due one of his creditors. This question arose in White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. Rep. 309, in the application of the statute of Illinois to a transfer by a debtor of all his property to some, only, of his creditors. The Illinois statute did not permit any preferences in voluntary assignments for the benefit of creditors. In the opinion of the court there delivered by Mr. Justice Harlan, it was said that:

"When an insolvent debtor recognizes the fact that he can no longer go on in business, and determines to yield the dominion of his entire estate, and in execution of that purpose, or with an intent to evade the statute, transfers all, or substantially all, his property to a part of his creditors, in order to provide for them in preference to other creditors, the instrument or instruments by which such transfers are made, and that result is reached, whatever their form, will be held to operate as an assignment, the benefits of which may be claimed by any creditor not so preferred, who will take appropriate steps, in a court of equity, to enforce the equality contemplated by the statute."

The court assumed that such was the doctrine of the decisions of the highest court of that state, and cited Preston v. Spaulding, 120 Ill. 208, 10 N. E. Rep. 903, which presented a case where a voluntary assignment was made by an insolvent firm, and in contemplation of it the debtors had sought to prefer certain creditors, which purpose was held ineffectual. The supreme court of Illinois does not accept the views of the court in White v. Cotzhausen as expressive of the doctrine of its decisions, nor does it recognize or adopt them as such. Farwell v. Nillson, 133 Ill. 45, 24 N. E. Rep. 74. The reasoning of the court in the White Case was to the effect that the transfer by an insolvent debtor of all his property to one or more of his creditors, in exclusion of others, though in payment of valid debt or debts, is an attempted evasion of the statute restricting or prohibiting preferences in a general assignment; and it is accordingly here urged on the part of the plaintiffs that as the debtor, Hunter, intended to discontinue business, and surrender all his property to the bank in payment upon the debt due to it, the transfer must be deemed as a preference in contravention of the statute before mentioned, and that such creditor can take the benefit of such transfer to the extent, only, of one-

·third of the amount in value or proceeds of the property so transferred. As this objection could not have been available at common law the question arises whether it is made effectual by the statute. It seems clear that the conveyance and transfer made by Hunter to the bank did not constitute a general assignment, within the meaning of the statute. As before suggested, that term, as there used, has a well-understood meaning. As a general rule, statutes changing the effect of the common law will not be construed to abrogate it, further than the clear import of the language of the statute requires. Fitzgerald v. Quann, 109 N. Y. 441, 17 N. E. Rep. 354; Dean v. Railway Co., 119 N. Y. 541, 23 N. E. Rep. 1054. And it was said by Judge Andrews in Karst v. Gane, 136 N. Y. 321, 32 N. E. Rep. 1073:

"Courts are less disposed than formerly to depart from, or qualify, the plain words of a statute, in favor of what is termed 'an equitable construction,' in order to take particular cases out of its operation upon some supposed view of policy not indicated in the act itself."

In the present case there was no purpose to make a general assignment for the benefit of creditors, and none was made, by Hunter; and therefore the facts do not bring it within the doctrine of the adjudications in this state,—that the transfer made by him of the property was part of a scheme to create forbidden preferences. In those cases such general assignments were contemplated and made. Berger v. Varrelmann, 127 N. Y. 281, 27 N. E. Rep. 1065; Bank v. Bard, 59 Hun, 529, 13 N. Y. Supp. 688; and some other cases. In such cases no distinction is observed between a transfer (preliminary to a general assignment) embracing substantially all the property of the insolvent debtor, or a portion of it only. The ground upon which this rests is that the sale to the creditor, and the general assignment, constitute a scheme to create a preference, and that, for the purpose of their interpretation and effect, the means or instruments employed and made to accomplish it may be treated as one, and therefore within the application of the statute. But it is urged on the part of the plaintiffs that no purpose to make a general assignment, or its accomplishment, is essential to bring the case within the operation of the statute when the insolvent debtor has, by a single transaction, disposed of all his property to one, or a portion only, of his creditors, in payment of his debt or debts owing to him or them to whom the sale and transfer are so made. The support of that proposition would require the conclusion that such a transfer of his property for that purpose is, in legal effect, a general assignment for the benefit of creditors, within the statute. There is apparently no warrant for such construction of the statute in the language employed to express the legislative intent. Nor is it seen how its purpose, so manifested, can be extended to defeat the right of such debtor to make, and one or some, only, of his creditors to take, a transfer of his entire property, on payment of valid debt or debts owing by him to such creditor or creditors to whom it is made, and to hold it for that purpose, as against the

other creditors of the debtor. Woodworth v. Hodgson, (Sup.) 12 N. Y. Supp. 424, affirmed 129 N. Y. 669, 30 N. E. Rep. 65. This proposition, as has been seen, was recognized by the court in the opinion delivered upon the review of the first trial of this action. In Manning v. Beck, 129 N. Y. 1, 29 N. E. Rep. 90, the question arose whether a transfer by an insolvent debtor of a portion greater than one-third of his estate to a single creditor, in payment of a debt, was effectual as against other creditors, assuming that the debtor, at the time of such transfer, intended to make a general assignment, which he shortly after made, and that at the time the creditor took such transfer he was ignorant of such intent of the debtor; and it was held that on such a state of facts the creditor would be entitled to the full benefit of the transfer so made to him for such purpose. The reasoning of the court in the Manning Case, in the opinion there delivered by Judge Peckham, so far as it has any bearing upon the present case, goes in support of the proposition that the conveyance and transfer in question of the property cannot be brought within the operation of the statute hereinbefore mentioned. The case of White v. Cotzhausen was there cited, and after making some reference to its nature, purpose, and effect the court added: "Our statute does not in terms cover such a case." The conveyance and transfer in question cannot, by construction of the statute, be treated as a general assignment for the benefit of creditors of Hunter. The conclusion is required by the evidence that the sole purpose for which they were made by him, and taken by the bank, was in payment upon the debt due to the latter from him. On the first trial there was evidence tending to prove that the question whether the bank could legally purchase the property was considered by the bank officers and its attorneys. It now appears that this question of legality, so considered, had relation only to the federal statutes pertaining to national banks. In the view taken, there seems to be no support for the action. The complaint should be dismissed.